CASE 64—ACTION TO ENFORCE MORTGAGE LIEN—MAY 16.

## Allen & Others v. Thompson.

APPEAL FROM FAYETTE CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS. AFFIRMED.

BILLS AND NOTES—LOANS BY INS. CO.—DEFENSE—INSOLVENCY OF MUTUAL CO.—RIGHT OF BORROWING MEMBER TO SET OFF VALUE OF POLICY.

Held: 1. The defense that the note and mortgage sued on were executed on the misunderstanding that the money was not to be collected as long as defendants paid the monthly dues on two policies of insurance issued by the mortgagee on their lives, and the interest accruing on the loan, is not good, being inconsistent

with the written contract, and there being no plea of fraud or mistake.

2. While the rule as to regular insurance companies is that, where a policy has not matured at the time of the insolvency of the company, the holder is a creditor, and, if indebted to the company, may set off against his indebtedness the value of his policy at the date of dissolution, that rule has no application to mutual companies, or where the debt constitutes a part of the guaranty fund of the insurer.

3. A company which has no assets, and no means of meeting death losses except from a maturity fund created by the contributions of members for that purpose, is a mutual company, though the dues are a sum certain, payable monthly, and not contingent upon the death of members; and as the mortuary fund, by the terms of the charter, can be used only in the payment of death losses, or in resisting claims on the fund, it is a guaranty fund, and a member to whom a loan has been made from that fund can not, upon the insolvency of the company, set off against his indebtedness his claim against the company on account of its breach of contract of insurance.

4. As the society was not authorized to lend out anything on mortgage of real estate except its mortuary fund, and it seems to have had no other means except the fees for current expnses, the court must assume that the note and mortgage on real estate on which its assignee sues were given for money which was loaned from that fund.

MORTON & DARNELL for Appellants.

1. The claim of a policy holder in an insolvent life insurance company should be valued as a death claim, where from the age and the health of the claimant re-insurance would be impossible. Life Assn. of America v. Levy, 33 Ra. Ann., 1203; Drake v. Rollo, 3d Biss., 273; Chenault v. Bush, 84 Ky., 536; Ky. Flour Co's assignee v. Mer. Nat. Bank, 90 Ky., 226; Bridgeford Trustee v. Barbour, 80 Ky., 534; Boston & Albany R. R. Co., v. Mercantile Trust & Deposit Co. of Baltimore, vol. 38, pp. 101, 102, L. R. A.; Universal Life Ins. Co. v. Binford, 76 Va., 103; Guy v. Globe Ins. Co., 9th Insurance Law Journal, 466; Joyce on Insurance, vol. 4, sec. 3596; People v. Knickerbocker Life Ins. Co., 40 Hun. N. Y., 44, also 30 Hun, 476; Lawson's Rights and Remedies vol. 5, sec. 2136.

J. EMBRY ALLEN for Appellant.

There is no power given in the charter to impose monthly dues, con-

Allen, et als., v. Thompson.

sequently the company had no right to declare a forfeiture by reason of any failure of Mrs. Allen to pay such dues.

THORNTON & KEER & J. E. CANTRELL for Appellees.

The defense was bad as a set off or counter claim and neither of the defendants is entitled to recover. Because:
1. It was a mutual society, and they were not entitled to a set off or counter claim.
2. There was no connection between the first and second classes of appellee's assignor.
3. Mrs. Allen had forfeited any rights she may have had by permitting her policy to lapse.
4. The claims of each are without any equity to sustain them.
5. B. R. Allen was only surety on the note of his wife, and could not plead a set off or counter claim and could not recover a judgment without making the assignor a party by cross petition.
6. Policyholders, whose claims had matured by death, were prior to all other claims.
7. To allow the claims of either would be an unjust and inequitable preference.
8. The funds borrowed, belonged to an express trust, and could not be diverted from the purposes for which they were held, by any one of the *cestui que trust.*
9. "He who seeks equity must do equity." Pomeroy's Rights & Remedies, sec. 168; Commonwealth v. Mutual Life Ins. Co., 112 Mass., 116; Carr v. Brown, 31 W. N. C., 501; Hellier v. Allegheny Co. Mut. Ins. Co., 3 Pa., 470; Conigland v. N. C. Mut. L. Ins. Co., Phil. Eq., 341; Vanata v. N. J. Mut. Life Ins. Co., 31 N. J. Eq., 15; Walker v. McKay, 2 Met., 294; Graves v. McKinney, 7 Rep., 224; Joyce on Insurance, vol. 1, sec. 343; Bacon on Benefit Societies, sec. 479.

Opinion of the court by JUDGE HOBSON—Affirming.

Appellants, B. R. Allen and Eliza Allen, his wife, executed to the Kentucky Grangers' Mutual Benefit Society on September 23, 1887, their note for $3,000, and secured it by a mortgage on the land of the wife, the consideration of the note being a loan of that amount by the company. They paid the interest on the note to September 10, 1890, and on that day $1,500 of the principal. On May 21, 1891, the society made an assignment to appellee, W. Z. Thomp-

son, for the benefit of its creditors, and on September 30, 1891, he filed this suit against appellants to recover the balance due on the note and foreclose the mortgage. For answer to the petition they alleged: (1) That the note and mortgage were executed on the understanding that the money was not to be collected as long as they paid the monthly dues mentioned in two policies issued by the society on their lives and the interest accruing annually on the loan. (2) That they had paid upon the two policies of insurance to the society dues to the amount of $918.40; that by its insolvency and deed of assignment it had failed to carry out its contract of insurance as made in the policies; and they therefore prayed a set-off against the note for the amount so paid. (3) That the policy on the life of appellant B. R. Allen was for the full sum of $2,000; that at the time of the society's assignment he was unable to obtain other insurance by reason of age and infirmity, and they prayed that his claim be treated as a death claim, as he was in the extreme evening of life; or that, if they were not entitled to this relief, they be credited at least by the present value of the insurance. The court below properly sustained the demurrer to the first defense, as there was no plea of fraud or mistake, and the alleged agreement was inconsistent with the written contract. He overruled the demurrer to the second and third pleas, but on final hearing gave judgment as prayed in the petition. The proof shows that the society is not only insolvent, but that the amount due by it on death losses is far more than its assets will pay. The question presented, then, is whether, upon the insolvency of the company, appellants should be allowed to set off against their note their claim against the society for its breach of its contract of insurance by its insolvency and assignment. The rule seems to

be well settled that, where policies have not become payable at the time of the insolvency of the society, the holder of an unmatured policy is a creditor, and entitled to share with the other creditors in the assets, the amount of his claim being the value of the policy destroyed at the date of the dissolution of the company; and where he is indebted to the company a set-off will be allowed him on his debt to the extent of his claim. But, while this is the general rule as to regular insurance companies, it is not applied in mutual companies, or where the debt constitutes a part of a guaranty fund of the insurer. See note to Boston & A. R. Co. v. Mercantile Trust & Safe-Deposit Co. (Md. 38 L. R. A., 97 (s. c. 34 Atl. 778), where the cases are fully collected. The decision of this case, therefore, must turn on the character of the company and the nature of the fund which appellants borrowed.

The Kentucky Grangers' Mutual Benefit Society was incorporated by an act of the Legislature in the year 1874. As originally constituted it was strictly a mutual companay, which made assessments upon its members whenever a death occurred, and paid the amount realized from the assessment to the beneficiaries of the deceased member. By the act of February 2, 1888 (1 Acts 1887-88, p. 231), the name of the society was changed by striking out the word "Grangers," so as to make it read, the "Kentucky Mutual Benefit Society." By this act it was empowered to add to its business a department to be known as "members of the second class," and to prescribe the membership fees and annual dues to be paid by such members. In the department of the second class it was prescribed that there should be two distinct funds, one to be called the "expense fund" and the other the "mortuary fund," and that the contributions which should be paid by members of this

Allen, et als., v. Thompson.

class for the purpose of paying death losses should be based upon the American Experience Tables of Mortality, with such additions to cover cost of collection and other necessary charges and expenses as should be deemed necessary. The act then provides as follows: "The time and manner of paying such contributions and the amount thereof shall be provided in the by-laws of the society; and said mortuary fund less the cost of collection or other necessary expenses shall be invested in State, county, or city bonds or bank stock, or loaned on good real estate security, and until so invested it shall be deposited in some bank, to be used only in the payment or settlement of death claims, or in compromising or settling any claim that may arise against such fund or to pay any cost or fees incurred by the society in resisting payment of such claims on said fund as the society may deem unjust or improper to be paid." The act also required the business of the first and second classes to be kept separate and distinct, and provided that neither class should be in any wise responsible for the obligations of the other class. Under this act the two policies to appellant, B. R. Allen and wife, were issued, by which the society agreed to pay at the death of the person insured the sum of $2,000, provided the monthly dues were regularly paid. These monthly dues were a sum certain, payable every month, and not contingent in any way upon the death of members, as under the old policy. Still the company had no assets and no means of meeting this obligation, except from the mortuary fund above referred to. Every member who took a policy was compelled to know that his only reliance for the payment of his policy in case of his death was the collection of the dues of the members. It was, therefore, strictly a mutual

company, and for this reason the funds of the two classes
were required to be kept separate, so that no part of the
funds of one class should be used to pay the losses of the
other. Besides, the mortuary fund, by the terms of the char-
ter, could be used only in payment of death claims or in
resisting claims on the fund. It was thus a guaranty
fund for the payment of death lossess, and can not be ap-
propriated to any other obligation so as to leave them un-
paid. There being more death losses due by the society
than its assets will pay, no part of the mortuary fund can
be used to satisfy the claim of appellants against the so-
ciety for its breach of its contract of insurance on their
lives, for to do this would be to divert the mortuary fund
from the purposes to which it was dedicated by the char-
ter; and from the very nature of the undertaking every
one must have understood that death claims would be paid
out of the mortuary fund so long as there was anything of
it, and that the members who survived would have to bear
the loss if, by reason of the insolvency of the society, the
scheme failed. The society was not authorized to lend out
any thing on mortgage of real estate except its mortuary
fund, and it seems to have had no other means except the
fees for current expenses. We must, therefore, assume
that the note and mortgage on real estate in this case were
given for money which was loaned from this fund. While
a loss has fallen upon appellants, the same loss has fallen
upon the other surviving members of the society, and it
would be not only inequitable, but clearly contrary to the
letter as well as the spirit of the charter, to allow them
to retain the money lent them to the prejudice of the out-
standing death claims. Judgment affirmed.