Farmers Bank of Wickliffe v. Wickliffe.

CASE 81.—ACTION BY FARMERS BANK OF WICKLIFFE
    AGAINST CHARLES WICKLIFFE ON NOTES.—
    February 3.

# Farmers Bank of Wickiffe ᴀ. Wickiffe

Appeal from Ballard Circuit Court.

R. J. Bugg, Circuit Judge.

Judgment for defendant, plaintiff appeals—Reversed.

1. Evidence—Parol Evidence—Varying Written Contract.—In the
   absence of a showing of fraud, misrepresentation, or mistake
   inducing the contract of suretyship, parol evidence is in-
   admissible to vary the terms of the contract of a surety on
   notes given to a bank by showing that a mortgage given to
   the surety to indemnify him against loss was in fact given
   to him only to hold for the bank with the understanding that
   he was not to be liable on the notes.
2. Same—Admissions—Statements by Agent.—Evidence as to
   statements by an agent made after the transaction in which
   he acted was over is not admissible as substantive evidence
   against his principal, but only to contradict the agent as a
   witness.
3. Principal and Surety—Discharge of Surety—Extension of
   Time.—Where the holder of a note agrees to give the maker
   additional time to pay the principal on payment of the in-
   terest to date without a renewal of the notes, the surety
   becomes discharged on the acceptance of the interest, but,
   where the agreement is to give such additional time on the
   payment of the interest and the renewal of the notes, the
   surety is not discharged unless the renewal notes are made.

J. M. NICHOLS & SON for appellant.

AUTHORITIES CITED.

Civil Code, sec. 113, subsec. 4; Berry v. Evans, 89 S. W. 12; Morse on Banks & Banking sec. 152, vol. 1, (3d ed.), sec. 169, p. 358.

J. B. WICKLIFFE for appellee.

AUTHORITIES CITED.

Cyclopedia of Law and Procedure, vol. 5, pp. 470-474; Caldwell v. National Mohawk Valley Bank, 64 Barb, New York 333; Farmers, &c., Bank v. Troy City Bank, First Dougl. (Mich.) 457; Reynolds v. Collins, 78 Ala. 94; Mitchell v. Porter, 15 Ky. Law Rep. 335.

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

The Farmers' Bank of Wickliffe brought this suit against Charles Wickliffe to recover of him the amount of four notes executed by O. P. Beck and him to the bank; the first being dated July 17, 1905, for $3,000, due in 12 months; the second October 5, 1905, for $3,369.60, due in 12 months; the third, February 23, 1906, for $4,000, due in 6 months; and the fourth dated May 31, 1906, for $2,300, due in 3 months. The notes were all evidently written upon the same form, and, except as to amount and dates, are in the same words. The first note reads as follows: "$3,000.00 Wickliffe, Ky., July 17th, 1905. Twelve months after date we jointly and severally promise to pay to the order of Farmers' Bank of Wickliffe three thousand and no-100 dollars, negotiable and payable at the Farmers' Bank of Wickliffe, Wickliffe, Kentucky, for value received with interest after maturity at six per cent. per annum. O. P. Beck. Charles Wickliffe." Wickliffe by answer pleaded that he signed the notes at the bank's request and for

its use, with the agreement that Beck was to execute to him a mortgage upon certain property, and that the bank would look to the mortgage for the debt, and not hold him responsible in any way. He also pleaded that the cashier on March 9, 1907, in consideration of the interest being paid in advance by Beck, gave time on all the notes for a year without his knowledge or consent, and this he relies on as releasing him thereon. Issue was taken upon the allegations of the answer, and upon a trial of the case before a jury there was a verdict and judgment for the defendant. The bank appeals.

Wickliffe testified on the trial: That one day Beck came to him, asking him to sign a note. That he then went to see Burton, the cashier, and said to him: "Did you send Beck to me to sign a note and take a mortgage?" He said: "Yes; I did. We cannot hold a mortgage, and I told him to go and get you to hold it for us." He then said to Burton: "Now, that's understood. I am holding the mortgage for the bank. It is your affair, and not mine. I am not responsible." Burton replied: "All right, go ahead." And he then signed the note. When the second note was brought to him, he thought it was a renewal of the first note, and paid no attention. The next note he thought was a renewal, and when the fourth was presented he did not sign it, and went to see Burton and told him that $4,000 was enough on the property and advised him to get additional security. Beck refused to give additional security, and he then said to Burton: "That's up to you. It is your transaction. I have nothing to do with it. Whatever you say about it you can do." Burton said: "Go ahead, and sign it then, it's all right." And he then signed the last note. Wickliffe also testified that Burton

had never demanded payment of him of the notes, although he saw him frequently and passed the bank every day. Burton denied in toto the testimony of Wickliffe; and it was shown by the proof that there was a mortgage executed by Beck to Wickliffe of date April 4. 1905, which begins with these words: "Know all men by these presents that O. P. Beck of Ballard county and State of Kentucky have this day become indebted to Farmers' Bank with Charles Wickliffe as security of the county and State aforesaid in the sum of $2,000 evidenced by my promissory note of even date herewith, due and payable on the 4th day of October, 1905," etc. It is also shown that on July 17th Beck and wife executed to Wickliffe a second mortgage, which begins with these words: "Know all men by these presents, that Charles Wickliffe, of Ballard county, and State of Kentucky, has this day become bound as my surety to the Farmers Bank of Wickliffe, of county and State aforesaid, in the sum of $3,000.00, evidenced by our promissory note of even date herewith, due and payable on the 17th day of July, 1906, and bearing interest at —— per cent. per annum from date until paid." Wickliffe testified on the trial that the first mortgage was written by a young lady at his request, but that he did not know anything about the second mortgage. The second mortgage was in the handwriting of Wickliffe's brother, who is an attorney at Wickliffe, but he testified that he did not remember under what circumstances he had written it. Burton testified, and this is also shown by the books of the bank, that these transactions began on April 3, 1905, when Beck and Wickliffe then first executed a note for $2,080, and finding that this note was not as much as Beck wanted on the next day executed a note for

$3,120 due in six months; and, when this note ma-
tured, the second note sued on was executed in re-
newal of it.   The other three notes were for loans
made at the time of their execution, Beck being
credited by the bank with the proceeds, which went
in part to cover his overdraft in the bank, and were
in part afterwards used by him.   The directors took
no part in the management of the bank, and left
everything to Burton, who was practically its manag-
ing agent.

On this evidence the question is: Can the evidence
offered by the defendant be received to contradict the
written instruments themselves?   He pleaded that
the writings did not conform to the real contract by
reason of fraud or mistake; but there is an entire
absence of any evidence of fraud or mistake.   He was
not deceived as to the purport of the writings.   He
understood perfectly what he was signing.   There was
no misrepresentation made by Burton except the
promise that he would not be held liable upon the
writing.   He knew that this part of the engagement
was not in writing, and to have put it in the writing
would have been to have nullified it.   The bank could
take a mortgage, but, if it could not, Wickliffe, a
stockholder, would be charged with notice that the
cashier had no authority to evade the law, and he
would not be allowed thus to throw a loss on the other
stockholders.

In Wright v. Remington, 41 N. J. Law, 48, 32
Am. Rep. 184, the defense was that Mrs. Remington
had signed the note upon a representation by the
plaintiff that the signing of it by her was a mere
matter of form, and that she would not be held liable
on it.   In the disposition of this defense, the court
said: "There is no rule better settled than that evi-

dence of contemporaneous parol declarations is inadmissible to vary the terms of a written contract. In the enforcement of this rule there is often a strong tendency to disregard its effect, induced by a feeling of the inequity of holding a party to the strict performance of an agreement into which he has entered, upon an assurance that it would not be enforced according to its terms. This feeling has led courts sometimes to recognize the parol declaration upon the ground that it amounted to an equitable estoppel. Notes to Duchess of Kingston's Case, 3 Smith's Lead. Cas. 729. But the rule of evidence that, when the contract is reduced to writing, the writing is the only evidence of the contract, excludes any evidence of the parol declarations. The rule is recognized as a wholesome doctrine by which men are enabled to place their agreements in a shape undisputable by the uncertainty of oral testimony. The weight of authority is overwhelming in favor of holding in the language of the American editors of the Duchess of Kingston Case: That 'a person who is so ill advised as to execute a written contract in reliance upon an assurance that it shall not be literally enforced must submit to the loss if he is deceived, and cannot ask that a principle of great moment to the community shall be made to yield for the sake of relieving him from the consequences of his indiscretion.' " In Kulenkamp v. Groff, 71 Mich. 675, 40 N. W. 57, 1 L. R. A. 594, 15 Am. St. Rep. 238, Groff showed that Kulenkamp said to him that he was satisfied with the principal, but he thought he could get his pay quicker, if Kulenkamp would go on it, because the principal would not see him suffer; that it was a custom at auctions to require a surety, and, if he made an exception in this case, others would demand

the same privilege; and that he would hold the note
and see that Kulenkamp had no trouble. They there-
upon called upon a bystander to witness the agree-
ment, and upon these terms Kulenkamp signed the
note. The court, rejecting the defense, said: "As
far as the claim of fraud is concerned, it is not
tenable. The signature of Groff was not procured by
false pretenses—by the statement of any fact as
existing which did not exist—but upon false promises
which have not been performed. It is no more nor
less than the nonperformance of an oral agreement
made at the time the note was signed and which oral
agreement was totally at variance with the terms of
the written contract as set forth in the note. This
cannot be considered such a fraud as would nullify
the note. If proof of this unperformed agreement
not to hold Groff upon this note, in plain contradic-
tion of its terms, can be admitted to destroy his lia-
bility upon it, then any unperformed oral agreement
made at the time a written contract or note is executed
may be admitted under the claim of fraud to defeat the
terms and purpose of the written agreement. The
maker of a note as well as the surety or indorser may
say: 'It is true I signed the note, but it was agreed I
was not to pay it, and the collection of it is a fraud upon
me.' Written instruments, under the admission and
use of such proof to defeat them, would be of but
little value and altogether uncertain, and of no more
strength than oral agreements." The following de-
cisions in this State are in accord with the rule above
laid down: Dale v. Pope, 4 Litt. 166; Bowers v. Linn,
(Super.) 14 Ky. Law Rep. 889; Citizens' Bank v.
Millet, 103 Ky. 1, 20 Ky. Law Rep. 5, 44 S. W. 366,
44 L. R. A. 664, 82 Am. St. Rep. 546; Allen v. Thomp-
son, 108 Ky. 476, 56 S. W. 823. These opinions are

in accord with the general current of authority. See 17 Cyc. 590, where many other cases are collected. We therefore conclude that this defense cannot be maintained, and should not have been submitted to the jury.

On the trial of the case the court allowed E. C. Watson, J. B. Wickliffe, and others to testify to statements made by Burton as to what he had done after the transaction was over, and when he was merely narrating what had taken place. This testimony could only be introduced for the purpose of contradicting Burton as a witness. It was not substantive evidence against the plaintiff at all. The statements of an agent in the transaction while he is managing it for his principal may be admitted against his principal because it is a part of the res gestae; but, when the transaction is closed and the agent merely tells what he has done or tells about what he has done, proof of these statements may only be introduced for the purpose of contradicting the agent as a witness if inconsistent with his testimony on the trial. It was shown by the evidence that on March 9, 1907, Beck paid into the bank $1,013.55, which was the interest on the notes for one year. He died very suddenly a day or so after this was done, and, after his death, the bank credited this money pro rata on each of the four notes. The amount was the interest on the four notes for a year. Burton testified that it was agreed between him and Beck that he might renew the notes for a year by paying the interest in advance; that Beck made a deposit of the interest, but died suddenly without renewing the notes. If this was the agreement between Burton and Beck, then Wickliffe was not released, because, although the money was paid, the notes had not been renewed; and,

the agreement being that he was not only to pay the money, but renew the notes in order to secure a year's extension on the debt, if the notes had not been renewed, the agreement had not been complied with, and the bank might have sued on the notes it held. The fact that Beck suddenly died after he made the deposit, and that the bank retained the money and credited it on the notes, did not prejudice Wickliffe in any way, and he cannot complain of this. When the money was deposited in the bank, if it had returned it to Beck's estate, Wickliffe might well have complained. The burden of proof is on the defendant to show a novation, and, if there is not sufficient evidence offered by him on another trial to show a novation, the matter should not be submitted to the jury, and, if it is submitted, the court should instruct the jury so as to present to them both the defendant's and the plaintiff's version of the transaction, telling them that their verdict should be for the defendant if there was an agreement to give 12 months' time on the notes on the payment of the $1,013.55 to the bank without a renewal of the notes; but that, if the agreement was to give 12 months' time on the payment of the money and the renewal of the notes, they should find for the plaintiff.

Judgment reversed and cause remanded for further proceedings consistent herewith.