HOUSE, RECEIVER v. SIEGLE.

Opinion delivered November 29, 1915.

1. INSURANCE—MUTUAL FIRE INSURANCE COMPANY—REGULATION.—Section 3, Act 192, p. 489, Acts of 1905, which was passed to regulate mutual fire insurance companies, *held* not to operate as changing a mutual fire insurance company into a stock company.

2. INSURANCE—INSOLVENT MUTUAL FIRE INSURANCE COMPANY—LIABILITY OF INSURED ON PREMIUM NOTE.—Where a mutual fire insurance company became insolvent, the receiver thereof may recover from a policy holder the full amount of an unpaid premium note given for insurance.

Appeal from Pulaski Circuit Court, Second Division; *Guy Fulk,* Judge; reversed.

*J. W. House, Jr.,* for appellant.

The Planters Fire Ins. Co. was a mutual company, without capital stock, and appellee is liable for the entire amount of his premium. 151 S. W. 1030; 30 N. E. 212; 56 S. W. 823; 66 Atl. 1072; 91 N. E. 380; 105 N. W. 1031; 52 N. W. 774-5; 119 Mass. 45; 72 Am. Dec. 773. The case in 130 S. W. 574 is not applicable. 112 Mass. 116.

2. Under the terms of the contract the entire premium was earned. 74 Ark. 507, 510; 19 Mich. 451.

No brief for appellee.

SMITH, J. Appellant, as Receiver of the Planters Fire Insurance Company, brought suit on the following note:

"$194.15                          "Dated at Mist, Ark.
"Entered $191.50     "This 22d day of September, 1914.

"On or before the 1st day of January, 1915, for value received, I promise to pay the Planters Fire Insurance Company, or order, one hundred and ninety-four and 15/100 dollars, at the home office, Little Rock, Arkansas, with interest at the rate of 10 per cent per annum from date until paid.

"If paid at or before maturity, all interest waived. Said amount being for cash premium on my insurance, this day applied for, and it is further agreed that if this note is not paid at maturity, the whole amount of premium on said insurance shall be considered as earned, and the contract be null and void, so long as this note remains overdue and unpaid.

"P. O. Little Rock, 800 Beach St.

                              "Otto Siegle."

The cause was heard on an agreed statement of facts, from which the statements herein contained are copied.

The insurance company was organized under the laws of Arkansas as a mutual company, and did business on a mutual basis, and had no capital stock. At its organization prior to 1895 it adopted by-laws, among which were the following:

## "ARTICLE I.

"Sec. 2. The annual meetings of the company shall be held on the first Monday in February of each year at 10 o'clock a. m., the first annual meeting to be held on the first Monday in February, 1896, at 10 o'clock a. m., at which meeting each member holding a membership contract with this company in full force, shall be entitled to vote for directors of this company, either in person or by proxy."

## "ARTICLE VI.

"Sec. 1. All membership contracts issued by this company shall be signed by the president or vice president, and attested by the secretary.

"Sec. 2. The directors of this company shall from time to time determine the premiums to be made on all membership contract holders, also to prescribe the time and manner in which said premiums shall be paid, and shall also fix the compensation of all officers, general and other agents.

## "ARTICLE VII.

"Sec. 1. A member may withdraw from this company at any time before the expiration of his membership contract, and it may be canceled by the company as provided for in the contract. In which case the secretary will cancel the contract and return the unearned portion of premiums.

## "ARTICLE VIII.

"Sec. 1. Should this membership contract remain in force for the period of time for which it was written, the member shall receive his *pro rata* of the net profits of the company, which shall consist of premiums and interest received, after deducting amount paid for losses, expenses of management, taxes and all other claims growing out of the business."

Section 2 of article VI was amended on May 1, 1915, to read as follows:

## "AMENDMENT TO ARTICLE VI, SECTION 2 OF THE BY-LAWS.

"On and after the adoption of this amendment to the by-laws, no premium shall be made on any policy issued to any member, by this company, beyond the amount of the original premium."

Said by-laws were attached to and made a part of the policy issued to appellee. And it was further agreed "That up to the time of the failure of said Planters Fire Insurance Company, towit, 4th of March, 1915, it had complied with the Act of the Arkansas Legislature of April 24, 1905; that it had at all times reserved 50 per cent of its premiums for the payment of losses and for the benefit of its policy holders; that on March 4, 1915, the date said receiver was appointed, there were approximately $33,000 adjusted losses, which were unpaid at that time, and approximately $50,000 in losses, which were unadjusted and unpaid at said time, and that none of the losses above mentioned have been paid in whole or in part since March 4, 1915. That the assets of said company consist largely of premium notes."

The note sued on was executed in payment of a premium due upon a policy of insurance for three years beginning September 22, 1914, and expiring September 22, 1917.

Upon the facts stated appellant says he is entitled to a judgment:

First. Because this being a mutual company, appellee is liable for the entire amount of his premium.

Second. Because, the note itself stipulates that if it is not paid when due, the entire amount is considered as earned.

It is insisted that a mutual company is not like a stock company, in that there is no capital stock, and each policy holder is a member of the association, and fire losses are to be paid by assessments made on the members, and that under the statutes of this State, and the by-laws of the insurance company, appellee is liable for the amount of his note.

The question here involved was considered by the Supreme Court of Tennessee in the case of *Gleason* v. *Prudential Fire Ins. Co.,* 151 S. W. 1030, in which case it was said:

"This case, on other features, was before this court at the last term, coming from the Court of Civil Appeals by *certiorari.* We had occasion at that time to consider the nature of such companies, and the nature of the contract between such companies and their members. These matters were fully discussed in an opinion of the Court of Civil Appeals, which we affirmed. *Gleason* v. *Insurance Co.,* 2 Higgins, 376.

"In that case it was held that a member of one of these mutual companies was liable for the amount of his premium note, even though the company had failed and was unable to continue the policy of insurance, and there had accordingly been a failure of the consideration for which the note was given. It was said that the members of such companies were both insurers and insured; they were not only policy holders in such cases, but *quasi* stockholders; and that their premium notes were assets in the hands of such companies for the payment of creditors.

"Companies organized upon the plan of this one have no capital stock. The cash paid in for premiums and the premium notes constitute their assets, and the policy holders or members sustain a relation to the company very similar to that of stockholders. They can no more recover premiums paid in, nor avoid premium notes, in case of insolvency, than could stockholders in an ordinary corporation recover money paid in subscription to stock, or avoid notes given for subscription to stock.

"So the insolvency of a company like this gives no right to a policy holder to recover any premium paid, or to avoid the payment of any premium note, so long as the company has outstanding debts." See, also, *Clark* v. *Mfg. Mut. Fire Ins. Co.,* 30 N. E. 212; *Allen* v. *Thompson,* 56 S. W. 823; *Stone* v. *N. J. Ferry Co.,* 66 Atl. 1072; *Hill* v. *Baker,* 91 N. E. 380.

(1)   It is true that the amendment to article 6, section 2, was made after the passage of an Act* of the General Assembly of this State approved April 24, 1905, entitled, "An Act to regulate mutual fire insurance companies," and was passed to conform to the requirements of that act, and the insurance company gave the bond there provided for.   Section 3 of this act contains the following, among other provisions:  "Each policy holder in such company shall be a member and liable to an assessment while this policy is in force, providing that no assessment can be made until the bond mentioned in section 4 is exhausted.  The profit of such company shall be divided among the members *pro rata,* according to the amount of premium paid on insurance carried by each, and such division shall be made by the directors at such time and in such amounts as the affairs of the company shall justify."   This act was passed for the better protection of policy holders in mutual insurance companies; but we think it did not operate to change the company from a mutual to a stock company.

(2)   We think there is nothing in the opinion in the case of *Federal Union Surety Co.* v. *Flemister,* 95 Ark. 389, which conflicts with the views here expressed.  While the insurance company in that case was shown to be a mutual company, the opinion called attention to the provisions of the statute permitting foreign mutual companies, such as that company was, to do business in this State, and to the character of bond they were required to execute as a condition precedent to their entering this State, and this court there said:

"A comparison of the provisions of the above section with those prescribing the conditions of the bond of stock insurance companies will show that in all essential particulars they are the same.  Acts of Arkansas, 1905, p. 772, and Kirby's Digest, § 4349.

"The effect of this statute is to make the liabilities of foreign mutual insurance companies doing business in

*Act 192, p. 489, Acts 1905.

this State under policies issued by them here the same as those of stock fire insurance companies.''

The agreed statement shows there were approximately $83,000 in losses which were claims against the receiver and which were unpaid at the time of his appointment. That the assets of the company consisted largely of premium notes given for membership contracts, in accordance with the terms of the policy and the by-laws of the company, and that it was contemplated that the fire losses were to be paid out of the premiums of the policy holders.

We have not been favored with a brief by appellee, and we do not, therefore, know the ground upon which the court below based its finding that ''the court being well and sufficiently advised, doth find that the plaintiff (receiver) is not entitled to recover anything.'' The court may have reached this conclusion from a consideration of section 1, of article 7, set out above.

Discussing a somewhat similar provision in the case of *Dewey* v. *Davis*, 52 N. W. 774, the Supreme Court of Wisconsin said:

''In the actions by the receiver to recover the 40 per cent. assessment on the premium notes which came to his hands, we hold that the Oshkosh Mutual Fire Ins. Company is what its name imports, a mutual insurance company, and nothing else, and hence that each policy holder in the company is a member thereof, and subject to all the incidents which result from such membership, whether the premium be paid in cash, or a premium note given therefor. Such being the relation of the policy holders to the company and to each other, it is entirely clear that each member is bound by the laws which control the organization and operation of the company, and can assert no rights against the company or its members unless the same are given by such laws. No right to recover an unearned premium on the termination of a policy is given by statute, except it is provided in section 1946d. Sanb. & B. Ann. St., that, at the request of the insured, the company shall cancel the policy and return the unearned premium. Article 15 of the by-laws gives the company the right to

cancel any policy, and requires it, in case it does so, to return the unearned premium. The policies in these cases contain stipulations for a return of unearned premiums in the cases abovementioned, and in those only. The plaintiff is not entitled to any unearned premium, unless he has brought himself within the above provisions. Certainly he has not done so. His policies were not canceled at his request, neither were they canceled by the company, but by operation of law. Both the company and the plaintiff were passive, and the action of the court, and that alone, worked the cancellation thereof.''

That was a suit by a policy holder against the receiver of the company to secure the allowance of a claim for unearned premiums on certain policies of insurance. Further discussing this question that court said:

''There is another reason equally as conclusive why the plaintiff can not recover such unearned premium. The premium notes constitute the only fund in the hands of the receiver out of which to pay claims against the insolvent company, and we are aware of no law which authorizes an assessment of those notes to pay unearned premiums on policies, whether the premium was paid in cash or by note. The statute only authorizes assessments to pay losses and expenses accruing during the period of the insurance, as was said by the Supreme Court of Massachusetts in considering a statute similar to ours in the case of *Com.* v. *Massachusetts M. F. Ins. Co.,* 119 Mass. 45; 'the liability to assessment is measured by the amount of the just claims for losses for which the company is then responsible. Neither this nor any other provisions of the rules or of the contract authorizes an assessment for the purpose of paying the value of unexpired policies or unearned premiums.' See, also, *Com.* v. *Massachusetts M. F. Ins. Co.,* 112 Mass. 116; *Vanatta* v. *Insurance Co.,* 31 N. J. Eq. 15; *Insurance Co.* v. *Taft,* 26 Ind. 240; *Mayer* v. *Attorney General,* 32 N. J. Eq. 815; *State* v. *Insurance Co.,* 91 Mo. 311, 3 S. W. Rep. 383; *Insurance Co.* v. *Harvey,* 45 N. H. 292.''

The case of *Sterling* v. *Mercantile Mutual Ins. Co.,* 32 Pa. St. 75, 72 Am. Dec. 773, was a suit on a note given

for an insurance premium to a company which became insolvent after issuing the policy of insurance. The syllabus in that case is as follows:

"Insolvency of insurance company before expiration of policy is no defense to action on premium note. Validity, not ultimate value of the company's promise, is the test of the obligation." To the same effect see, also, *Hammond* v. *Knox,* 109 N. Y. Supp. 373; *Allen* v. *Thompson,* 56 S. W. 823.

Having held with appellant on his first contention, it is unnecessary to decide whether he might not also be entitled to recover under his second contention.

It follows, therefore, that judgment should have been rendered in appellant's favor, and the judgment of the court below is, therefore, reversed and judgment entered here for the amount of the note and the interest thereon.