## Martin v. United States Trust Company, Assignee of Louisville Property Company.

(Decided February 25, 1927.)

### Appeal from Jefferson Circuit Court.
### (Common Pleas, Second Division).

1.  Trusts.—Broker formerly employed by trust company, knowing as outside real estate agent he could not sell any property in its hands as assignee, under terms of company's agreement with assignor, unless proposition from purchaser and proposed com-mission were approved by company's counsel, held not entitled to commission for sale to party with whom he carried on nego-tiations, in absence of submitting written proposition.
2.  Principal and Agent.—One who deals with an agent or trustee, having notice of limitations of his authority, is bound by these limitations.

ELI H. BROWN, JR., WM. B. THOMAS and JOHN D. CARROLL for appellant.

HELM BRUCE, LEON P. LEWIS, BLAKEY, DAVIS & LEWIS,

HUSTON QUIN and BRUCE & BULLITT for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Affirming.

Appellant brought this suit against appellee to re-cover $135,000.00, his commission as a real estate agent for selling coal properties in Bell county, Kentucky, for $1,350.000.00. The allegations of the petition were con-troverted, and at the conclusion of the evidence the court instructed the jury peremptorily to find for the defen-dant. The plaintiff appeals.

The facts are these: The Louisville Property Com-pany made a voluntary assignment to the United States Trust Company. It owned a large amount of land in

Kentucky, Tennessee, Alabama, etc. The assignee was authorized to sell the property and settle the affairs of the company, but one of the conditions of the writing was this:

> "(3) It is contemplated that the trust company will, through its own organization and as a part of the service hereinabove mentioned, look after the finding of purchasers and the negotiation of sales of property that shall come to its hands under said deed; but whenever in the judgment of the trustee it is necessary that the services of outside real estate agents or brokers be secured to aid in the disposition of any particular parcel or parcels of property, they are authorized to make such employments at the expense of the estate, provided the facts connected therewith and the proposed compensation to be paid are first submitted to the counsel of the trust company, hereinafter named, or their successors, and they approve in writing such employments and the terms thereof."

The trust company employed Atwood R. Martin at a salary to make a prospectus of the property. This he did in three or four months, and his employment at a salary terminated on March 31, 1920. After this he kept his office on the second floor of the trust company's building as a real estate agent, but he was about the office of the trust company every day at times. On August 4, 1920, R. T. Irvine wrote to the trust company to make an engagement in regard to the land in controversy. The company wrote him that Mr. Veech, the president of the company, was away and would be back about September 1. A number of letters and telegrams passed between Irvine and the trust company, until September 25, when Irvine wired Veech, "Can I see you in your office Monday?" Veech replied that he would be glad to see him. On Monday, September 27, Irvine went from his home in another state to Louisville to the office of the trust comany to see Mr Veech. He had had no communication with Mr. Martin. When he got to the trust company's office Mr. Veech was busy and while he was waiting for Mr. Veech he met Mr. Martin, who took him up to his office and talked with him about the property. This was the first communication that Martin had with Irvine in any way. The next day Martin wrote Veech a letter telling him what had occurred between him and Irvine, and concluding his

letter with these words: "I hope to secure a definite proposition from him in the near future." Irvine did not see Veech on that visit. He and Martin had some correspondence until November 1, 1920, when Martin wrote him a proposition to sell him 19,000 acres for $900,000.00 cash if accepted on or before January 1, 1921. Thus things ran along. Irvine did not accept the proposition, and on January 11 wrote Martin that owing to the severe pinch in money matters he had been unable to put the deal through. Martin, on January 12, wrote Irvine urging him to close the matter, saying that he had other parties in view. Some correspondence ensued between them until February 28, when Irvine wrote Martin that it was impossible for him to do much during the present financial depression. There all negotiations between Irvine and Martin ceased. Nothing more was done between them. In the following July Irvine and Veech had a conference with Mr. Helm Bruce, the attorney for the Louisville Property Company. Nothing was concluded, but Bruce suggested that the L. & N. Railroad Company had a large debt against the Louisville Property Company and perhaps it could be arranged for the railroad company to take the bonds and thus relieve Irvine of the necessity of raising the price in cash. Thus matters stood until early in December, 1921, when Irvine came to Veech and asked him if he was in a position to negotiate for the sale of the Bell county property. Veech told him he was. About ten days later Irvine came back to Veech's office and he and Veech then agreed on a sale of 29,000 acres for $1,350.000.00, of which $50,000.00 was paid in cash. Notes for $50,000.00 each were executed, payable at intervals of six months, and the balance of the purchase money, $1,000,000.00, was to be paid in bonds maturing in fifteen years, the railroad company having agreed to take the bonds. The sale was then closed between Veech and Irvine, Martin having no part in the transaction after February 28, 1920.

The trust company adopted the policy of allowing any real estate agent to sell any of the property in its hands as assignee, provided the proposition which he had from the purchaser and the proposed compensation to be paid him were first submitted to the counsel of the trust company and approved in writing by the counsel, who were Messrs. Helm Bruce and Clayton Blakey. Martin sold three or four pieces of property in this way and received his commission. He well knew the terms of the

contract under which the trust company was selling the property. He at no time received a proposition in writing from Irvine. No propostion to him for a purchase of the property by Irvine was ever submitted to the counsel or approved by them in writing. The proposition which he made to Irvine was never accepted. The contract which was closed was entirely different from the one which he proposed to Irvine. He did not bring the parties together. He had no communication of any kind with Irvine before Irvine began his correspondence with the trust company. The rule is well settled that one who deals with an agent or a trustee, having notice of the limitations of his authority, is bound by these limitations. Martin well knew the limitations upon the authority of the trustee. He at no time had the counsel's approval in writing of his employment, or of any contract to pay him commission. To sustain Martin's claim here against the trust fund would be to entirely ignore the terms of the written contract. The purpose of the stipulation was to prevent the trust estate being involved in litigation over the claims of real estate agents for commissions for the sale of the property. The provision that employment should only be made at the expense of the estate with the written consent of the counsel, was a reasonable provision to this end, and no employment having been made, as provided by the contract, Martin is without remedy. 39 Cyc. 562-563, 26 R. C. L. p. 1372.

Judgment affirmed. Judge Logan not sitting.