## Brown v. Union Central Life Insurance Company.

(Decided December 15, 1931.)

LOUIS J. TOOMBS for appellant.

BEN V. SMITH & SON for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—
Affirming.

Isaac Brown, in September, 1919, was a prominent farmer living on a farm in Mercer county, Ky. George C. Hall was at that time cashier of the Bank of Burgin, Burgin, Mercer county, Ky. In a conversation between them, Hall inquired of Brown why he did not purchase a larger farm, closer to the road. Brown informed him that he did not have the money with which to purchase it. Hall stated that he represented a company that would let him have all the money he wanted at 5 per cent per annum, and give him twenty years in which to pay it. Brown stated that he would consider the matter and let him know whether he would undertake to purchase a larger farm. He began to look for, and found, a farm of 209 acres in Mercer county, about 3 miles north of the village of Burgin, located on the east side of the Danville and Pleasant Hill pike. The farm was priced to him at $50,000. Thereafter he returned to the Bank of Burgin and notified Hall that he had made up his mind to purchase the farm and desired to take advantage of his offer, and that he would need $20,000. Hall again stated to Brown that he represented a company that would let him have all the money he wanted at 5 per cent per annum, and that he would notify the person who investigated farm loans for the company which he represented, and have him come to Mercer county and look over the farm with the view of making him the loan. Shortly thereafter Bert L. Sims appeared on the scene and assumed charge of the negotiations with Brown. Brown signed a written application to the Union Cen-

tral Life Insurance Company on one of its forms provided by Sims for the purpose of obtaining a farm loan. The farm was appraised, and its appraisement and the agent's report thereof which was signed "G. C. Hall, Agent of Financial Correspondent," together with the application, were turned over to Sims. He transmitted same to Andrew L. Todd at Murphreesboro, Tenn., who at the time had written authority from the Union Central Life Insurance Company to solicit and procure applications for farm loans. Sims about the year 1919 had been a clerk in the office of Todd at Murphreesboro, Tenn., where he had worked for Todd for some time. By mutual agreement he quit his work in the office and undertook to engage in the farm loan business on his own responsibility. He came into Kentucky and set up business for himself at Lexington. Neither Sims nor Hall had any connection with the Union Central Life Insurance Company, either prior to, or at the time of, the negotiations of the loan to Brown, nor at the time it was completed. Hall was unknown to Todd and to the officials of the Union Central Life Insurance Company, and he at no time had any communication by letter or otherwise with either of them. Sims had no connection, either direct or indirect, with the Union Central Life Insurance Company, and had no authority from it to solicit, to accept applications, or to make loans, for it. However, he would solicit and accept applications for loans on his own accord and submit them to Todd, who in turn would submit them to the Union Central Life Insurance Company, or some other company engaged in making loans on farms. The extent of Todd's authority was to solicit and obtain applications for loans on farms and submit the same to the Union Central Life Insurance Company, subject to such disposition thereof as it determined in its own way. Under his contract with the Union Central Life Insurance Company, Todd made his own arrangements with, and looked to, the borrower for his charge for abstracting the title and the amount, and the payment, of his commission. His charge for abstracting the title and his commission for his services incident to obtaining the loan were matters between him and the borrower, in neither of which the Union Central Life Insurance Company had any interest, nor was it concerned.

The Union Central Life Insurance Company, on due investigation by it, and according to its own determination, decided to, and did, approve Brown's application.

The loan was made by it pursuant to his written application, based upon the appraisement of the appraisers that the security offered was ample, and on evidence of his title as shown by the abstrict. The loan was $20,000, evidenced by Brown's twenty notes for $1,743.68 each, one due at the end of each next ensuing year after the date of the notes, for twenty years, securd by mortgage to it, executed and delivered by Brown and his wife on the 209 acres of land. The notes, mortgage, and receipt for the $20,000, together with a form of acceptance, were forwarded by the company to Todd, with directions to him that the money be delivered to Brown, for it, when the notes, mortgage, and ratification receipt were executed by Brown, and upon his paymnt of the recording fees and recording taxes. Upon receipt of the papers by Todd, they were forwarded by him to Sims at Lexington, Ky. Upon Sims receiving the papers from Todd, he went to Burgin, carrying them with him, where he and Hall closed the transaction with Brown. The notes were executed by Brown and the mortgage by him and his wife. Brown signed the ratification of the transaction and receipt for the money which were delivered to him by Sims and Hall. Sims and Hall delivered to Brown the company's check for $20,000, which he deposited to his credit in the Bank of Burgin. At the time and place of the closing of the transaction by Sims, Hall, and Brown, and as part of it, Brown executed and delivered to Sims his check for $1,743.68. Sims paid to Hall $200; he paid the mortgage tax and other fees amounting to $43.75, and remitted the balance of the $1,743.68 to Todd, and, on receipt thereof, Todd retained $1,000 as his commission, and credited Sims' account with him by $499.98.

Brown paid the notes to the Union Central Life Insurance Company, which matured January 1, 1921, 1922, 1923, 1924, 1925, and 1926, when he refused to pay the subsequently maturing notes.

On the 23rd day of April, 1927, he filed this action against the Union Central Life Insurance Company wherein he sought to recover the $1,743.68 paid by his check to Sims, with interest thereon at the rate of 6 per cent per annum from January 1, 1920, until paid, and for the additional sum of $138.83, with like interest from January 1, 1921, and a like sum for the years 1922, 1923, 1924, 1925, and 1926, with like interest, charging that these several amounts were the difference each year

between 5 per cent and 6 per cent per annum interest on his notes maturing in those years. He alleged these amounts were obtained from him by false representations of the Union Central Life Insurance Company by its agents, alleged to have been made to him during the negotiations of the loan, and prior to the time of the execution and delivery by him of the notes and mortgage, and that he was entitled to have these amounts credited on the company's unpaid notes.

Similar pleadings, issues, proven facts, and questions of law were presented to, and determined by, this court in Union Central Life Insurance Co. v. Edwards et al., 219 Ky. 748, 294 S. W. 502, except those we shall hereinafter state and consider. The case, supra, is conclusive on all questions and issues presented herein, except those we shall hereafter state and determine.

The facts on the issues appearing in the present case, which were not presented and considered in the Edwards case, are substantially as follows: After Brown made his written application for the loan and turned it over to Hall and Sims, he failed to receive any information from the company in regard to it as soon as he thought he should have recived it. For this reason, he claims, he wrote a letter to the Union Central Life Insurance Company in regard to it. The company claims that this letter was never received by it nor by any one for it. The testimony of Brown is to the effect that he wrote a letter to the company, but it is not shown by his testimony that it was mailed after it was written. In the absence of evidence showing it was properly addressed, stamped, and mailed, there is no presumption that it was received by the addressee. Eastham v. Stumbo, 212 Ky. 685, 279 S. W. 1109.

Brown claims that he received from the company a letter dated November 15, 1919, purporting to have been signed by Lewis Breiling, treasurer, in response to his letter, wherein it was written:

"Union Central Life Insurance Co.

"Nov. 15, 1919

"Mr. Isaac S. Brown, Harrodsburg, Ky., R. 1.

"Dear Sir: I have your letter of Nov. 11, in regard to your pending loan on your Mercer county farm property.

"Your request for information relative to first payment and other charges on your loan is not quite clear but I presume! your inquiry relates to abstract charges &c., if so I suggest that you ask our local agent about such charges. He will be glad to give you full information regarding the terms, conditions and charges to be made if the loan is approved and closed.

"Hon. A. L. Todd of Murfreesboro, Tenn., is the Company's agent for your territory and Mr. George C. Hall is local agent for the county of Mercer, either of these gentlemen will advise you as the charges and explain the amortized play of payment.

"Yours respectfully,

"Louis Breiling, Treasurer."

The Union Central Life Insurance Company claims that this letter is a forgery. Those of its employees who were in charge of its affairs, business, and office at Cincinnati, Ohio, including Louis Breiling, testify that this letter is a forgery. The original letter has not been made a part of the record. A photostatic copy of it was made by the company during the taking of depositions. It has been made part of the record. The original letter is shown to have been mailed by Brown to his attorney at Covington, Ky. The trial court in its finding of facts concluded that this letter was a forgery. His conclusion in this respect is authorized and fully sustained by the evidence. A Mr. Fast appeared in Mercer county and imparted to Brown the information upon which his cause of action was predicated, and solicited Brown to employ him to recover the amount sued for, which he did. Different attorneys appeared and disappeared in the case during the pendency of the action. Sims was not introduced as a witness. Fast failed to testify explaining how, when, and from whom he obtained the information he imparted to Brown and his connection with the original letter. Fast resided at Covington, Ky., just across the river from Cincinnati, Ohio. The attorney of Brown who had possion of the original letter neither testified nor produced the letter. It was written on paper not in use by the company at the time of its date. It was not signed in the usual and customary manner in which the employee of the company was in the habit of signing his letters at that time. The signature of Breiling to it is satisfactorily shown not to be in his handwrit-

ing. Another inexplicable fact connected with the original letter is that a copy of it was found in the files in the office of the company at Cincinnati. But, even if the letter be regarded as the act and deed of the company, it does not follow that Brown is entitled to the relief sought. Accepting the letter as the act of the company and an impartation to Brown of the fact that George C. Hall was the local agent of the company in Mercer county, Ky., and A. L. Todd was its agent for the territory including Mercer county, it is also undisputed that each of the twenty notes signed by Brown on its face conveyed to him this information:

> "No agent is authorized to make any contract verbal or written differing from that written and printed on the face of this note, and the instrument securing it, nor is any agent permitted to collect any part or all of it unless endorsed to him for collection by an officer of the company."

Thus was imparted to Brown direct and unequivocal information that neither Sims nor Hall had authority to collect and receive from him the $1,743.68. Brown cannot escape the consequences of the notice thus brought to him by the face of the notes. He cannot be permitted to say that he did not read them when he signed them, or that he did not know that they contained the statement quoted therefrom. He does not claim that his signature to the notes and mortgage was obtained by fraud or misrepresentation. It is a rule that one who can read and has an opportunity to read the contract which he signed must stand by it, unless his signature is obtained by fraud or he was misled as to the nature of the instrument. Mayfield Land Co. v. Via, 189 Ky. 563, 225 S. W. 366; Pickrell & Craig Co. v. Bollinger-Babbage Co., 204 Ky. 314, 264 S. W. 737; Spotswood & Son v. Lafayette-Phœnix Garage, 207 Ky. 477, 269 S. W. 514; Ross v. Oliver Bros., Etc., 152 Ky. 437, 153 S. W. 756; Morgan v. Mengel Co., 195 Ky. 545, 242 S. W. 860.

The Union Central Life Insurance Company had the right so to limit the authority of Hall, even if he was its duly constituted agent at the time of the execution and delivery of the notes by Brown and so to give him notice of such limitations of Hall's authority. Iverson v. Metropolitan Life Insurance Co., 151 Cal. 746, 91 P. 609, 13 L. R. A. (N. S.) 866; Lauze v. N. Y. Life Ins. Co., 74

N. H. 334, 68 A. 31; Phœnix Insurance Co., v. Spiers, Etc., 87 Ky. 285, 8 S. W. 453, 10 Ky. Law Rep. 254; Connecticut Fire Ins. Co. v. Roberts, 226 Ky. 534, 11 S. W. (2d) 148; Martin v. U. S. Trust Co., 219 Ky. 374, 293 S. W. 150; Union Central Life Insurance Co. v. Edwards, supra.

Conceding that the Union Central Life Insurance Company, by its treasurer, wrote, mailed, and thereby delivered to Brown the letter in question, the face of the notes brought home to him the full knowledge of the limitations of the authority of the intermediaries in so far as they were acting as its agents.

The information furnished Brown by the face of the notes leaves no ground on which to base the conclusion that, in collecting the $1,743.68 as they did, they were acting for the company or within the apparent scope of their authority. The company received no part of this sum. No usury is charged to be embraced in the notes executed by Brown to the company. Union Central Life Insurance Co. v. Edwards, supra; Connecticut Fire Ins. Co. v. Roberts, supra.

The appellant insists that he is entitled to credit by the difference between interest at the rate of 5 per cent per annum and interest at the rate of 6 per cent per annum for each of the years 1921, 1922, 1923, 1924, 1925, and 1926, in which he paid the installment notes, on the amount of each note. He is in no better position as to this difference in the interest rates than he is to recover the $1,743.68. Neither Sims nor Hall in their participation in the negotiation of the loan of $20,000 to the appellant had any authority or right to represent the appellee or to make any statement affecting it or its rights to any extent or in any manner whatsoever. The appellant, without any right or reason so far as the appellee was concerned, assumed they had authority to act for appellee, and he did so without its knowledge or consent. Even if the letter which appellant claims he received from the appellee was written by it or its authority, the notes carried information to him that they were without authority to alter, change, or modify the terms or provisions of the notes and mortgage, or to make any contract, verbal or written, differing from that written or printed on the face of the notes and the mortgage. The notes conveyed to appellant the information that he was to pay 6 per cent interest, and this could have

been easily ascertained by him before placing his signature thereto. But, leaving out of consideration this view of this issue, there is another potent reason appearing in the record which precludes his right to relief on this issue.

It is alleged by appellant, as the basis of his right to recover the difference between the interest at 5 per cent and 6 per cent per annum, that the appellee represented to him at the time of his making the application for the loan of $20,000 that the rate of interest was 5 per cent per annum and no more; that he relied upon this representation, and made the application for the loan on the "amortization plan." His testimony touching the subject of interest fixed the time of the making of the representation concerning the rate of interest as of the date of the making of the application. He nowhere testified that any statement was made to him pertaining to the rate of interest at the time and place of, or contemporaneously with, his signing and delivering of the notes, mortgage, and ratification receipt and its delivery of the $20,000 check to him. No allegation is found in his pleadings charging, and no proof was offered by him tending to establish, either fraud or mutual mistake in the execution of the notes and mortgage. Not only is it a fixed rule that, to alter, change, or vary an executed contract on the grounds of mutual mistake, the evidence must be clear and convincing or such as to establish a mistake and its mutuality beyond a reasonable controversy (Whitt v. Whitt, 145 Ky. 367, 140 S. W. 570), but the facts constituting the mistake must be set forth in the pleading, setting up the mistake as a ground of relief. (Evans v. Stapleton et al., 201 Ky. 716, 258 S. W. 295; Svea Fire & Life Ins. Co. v. Foxwell, 234 Ky. 95, 27 S. W. (2d) 675; Denny v. Crabtree, 194 Ky. 185, 238 S. W. 398.) It is also a settled rule that, to alter or change or vary a note or any other written instrument on the ground of fraud, the facts constituting the fraud must be set out in the pleading as well as the portion of the contract, which was omitted from, or improperly inserted in, the written instrument, in order to obtain relief on the ground of fraud. Ashcraft v. Farmers' D. B., Etc., 225 Ky. 836, 10 S. W. (2d) 276; Davidson v. Falls, 215 Ky. 368, 285 S. W. 209; Speed v. Willow Springs Distilling Co., 140 Ky. 269, 130 S. W. 1103; Newman on Pleadings, sec. 4251.

Neither his pleading nor his evidence brings the issue as to the difference between the 5 per cent and 6 per cent interest per annum within these principles. He claims in his testimony that Hall and Sims, and especially Hall, made the statements to him concerning the rate of interest before, and at the time of, his signing and delivering of the application for the loan.. The applicable rule in such cases is stated most aptly in Tross v. Bills' Ex'x, 189 Ky. 120, 224 S. W. 660, 663, as follows:

"A general rule of evidence is that proof of contemporaneous parol declarations and agreements is not admissible to contradict, vary, or alter the the terms of a written contract, unless the writing only purports to express a part of the contract, or the contract is set out in short and incomplete terms, which makes parol evidence necessary to make clear what of itself is unintelligible, and then the offered evidence must not be such as is inconsistent with the terms of the writing. Castleman-Blakemore v. Pickrell & Craig Co., 163 Ky. 750, 174 S. W. 749; Farmers Bank v. Wickliffe, 131 Ky. 787, 116 S. W. 249; Fairbanks-Morse Co. v. Manning, 164 Ky. 478, 175 S. W. 1000; Citizens' Bank, Etc., v. Millett, 103 Ky. 1, 44 S. W. 366, 20 Ky. Law Rep. 5, 44 L. R. A. 664, 82 Am. St. Rep. 546; Kreitz v. Gallenstein, 170 Ky. 16, 185 S. W. 132; McKegney v. Widekind, 6 Bush. 107; Dale v. Pope, 4 Litt. 166. The same rule is applied when attempts are made to prove prior and contemporaneous parol agreements and declarations, in defense of the recovery upon notes and bills. Garten v. Chandler, 2 Bibb, 246; Williams v. Beazley, 3 J. J. Marsh, 577; Bowers v. Linn, 14 Ky. Law Rep. 889; Moore v. Parker, 15 Ky. Law Rep. 125; Allen v. Thompson, 108 Ky. 476, 56 S. W. 823, 22 Ky. Law Rep. 164; McCown's Adm'r v. Jennings, 2 Ky. Law Rep. 315; Ward v. Jones, 11 Ky. Law. 273; Curran v. Askin, 7 Ky. Law Rep. 367; Citizens' Bank v. Millett, supra.. The presumption is that when parties have reduced their contracts to writing all the negotiations are merged into the writing, and the final conclusions of the parties are embraced in it, and if a party would show that a plain, unambiguous writing fails to express the intentions of the parties, he must show that it

fails to do so because of fraud or mistake in the preparation and execution of the writing. In the instant case, there was no allegation or intimation that either by fraud or mistake there was any part of the contract left out of the written memorial, nor was there any attempt to put any other terms into the writing on the ground that they had been omitted through fraud or by mistake." See, also, Simons v. Douglas' Ex'r, 189 Ky. 644, 225 S. W. 721; Ashcraft v. Farmers' Deposit Bank of Meade County, 225 Ky. 836, 10 S. W. (2d) 276; Prudential Life Ins. Co. of America v. Bowling, 237 Ky. 290, 35 S. W. (2d) 322; Davidson v. Falls, 215 Ky. 368, 285 S. W. 209.

The principles enuniciated in these cases are conclusive of, and against the right of the appellee to recover the difference between 5 per cent and 6 per cent per annum.

Learned counsel have ably and thoroughly discussed in their briefs other questions which we do not deem necessary to consider to reach a just and proper determination of this case.

The judgment of the chancellor being consistent with our views, it is affirmed.