## Stewart, et al. v. Gardner, et al.

(Decided February 7, 1913.)

Appeal from Warren Circuit Court.

1.    Bills and Notes—Defense that Signers were not to be Bound—Fraud—Mistake.—In the absence of an allegation and clear and

convincing proof of fraud or mistake, contemporaneous parol declarations are not admissible to show that the signers of promissory notes were not to be bound, and such a defense is not tenable.

2.   Contracts—Option on Real Estate and Personalty—Separate Price Not Fixed—Failure to Exercise Option or to Sign a Written Agreement to Take the Property—Statute of Frauds.—When a party has given an option on certain real estate and personal property, and no separate price is fixed for the real estate and personalty, and the contract provides that if he fails to make the cash payment and to execute notes for the balance, within the time provided by the contract, or any extension thereof by mutual agreement of the parties, his rights were to cease, and he fails to exercise his option within the time and upon the terms provided by the contract, and does not otherwise bind himself in writing to take and pay for the property, neither party is bound and for a failure to take and pay for the property the party giving the option cannot recover damages.

BRADBURN & BASHAM, for appellants.

GRIDER & HARLIN, for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

W. C. Stewart, J. G. Stewart, Aaron Miller and J. E. Condra were the owners of and were conducting a stone quarry in Warren County, Kentucky, under the firm name of Slim Island Stone Company. Each of these parties owned a one-fourth interest in the partnership business. On September 17, 1910, W. C. Stewart, Aaron Miller and J. G. Stewart gave to one C. H. Felton an option on the property, which consisted of 45 acres of land and certain derricks, engines and other machinery. Under this option Felton was given the right to purchase the property at any time within thirty days at the price of $17,000, $9,000 of which was to be paid in cash and the remainder in equal installments of six and twelve months from September 16, 1910. The contract provided that should said Felton fail or refuse to pay the cash payment provided for and to execute notes for the deferred payments, then his rights under the contract should cease, unless the time for acceptance should be extended by mutual agreement. There was a further provision in the contract to the effect that should the sale be executed and completed, the said Felton or his company was to assume control of the business and enjoy its profits and assume its losses from September 16, 1910. For his interest J. E. Condra was to take $5,000 worth of stock in the

new company. Felton succeeded in interesting B. F. Gardner and E. G. Smallhouse in the enterprise, and a corporation known as the Barren River Stone Company was organized with a view of exercising the option held by Felton. On October 17, 1910, the option was extended for a period of thirty days. The extension agreement endorsed on the option is as follows:

"By the mutual agreement of all parties to the above option, we the undersigned hereby extend the above option for a period of thirty days from its expiration (Oct. 16, 1910), upon the same terms and conditions contained therein, with the exception, however, that for the deferred payments of $8,000.00 mentioned in above original option, we agree to accept $8,000.00 in first mortgage bonds, as cash, of an issue of $30,000.00 that may be placed upon the above mentioned property by the said C. H. Felton, his successors or assigns.

"Witness our hand, this 17th day of October, 1910."

On November 3rd., W. C. Stewart, J. G. Stewart, Aaron Miller, J. E. Condra, and their wives, executed a deed to C. H. Felton. This deed was left in escrow with the Potter & Matlock Trust Company, to be delivered on completion of the trade. On November 10th., Felton executed a deed for the same property to the Barren River Stone Company. This deed was also left with the bank to be delivered when the deal was consummated. On November 15, 1910, the Barren River Stone Company executed a mortgage to the Potter & Matlock Trust Company, Trustee, to secure an issue of bonds amounting to $30,000. When the parties assembled to consummate the trade, B. F. Gardner, who was to take a certain amount of the bonds, had some misunderstanding with Mr. Potter, of the trust company, in regard to the money, and the deal fell through. Subsequently, the Slim Island Stone Company sold the property to one Tygreet.

The Slim Island Stone Company was without means to meet its pay rolls, and on October 17th, it, through its manager, W. C. Stewart, executed to B. F. Gardner a note for $477.35, payable thirty days from date. On November 10th, the same company executed to Edward Smallhouse a note for $477.35, payable thirty days from date. Each of these notes was also signed by W. C. Stewart, Aaron Miller and J. G. Stewart. The note payable to Smallhouse was endorsed by him and delivered to B. F. Gardner. Certain accounts due the Slim Island Stone

Company were also turned over to Gardner, with the following endorsement signed by Condra: "The above invoices are given to B. F. Gardner as collateral security on money loaned to Slim Island Stone Company for pay rolls."

B. F. Gardner brought this action to recover on these notes. The defendants pleaded in substance that Gardner and Smallhouse agreed to furnish the money represented by the notes in consideration of the extension of the option, and that the notes were executed merely as memoranda to be used by Gardner and Smallhouse for the purpose of showing the Barren River Stone Company, how much Gardner and Smallhouse had paid out individually. Defendants also filed an answer and counterclaim against Gardner and a cross-petition against Felton, Smallhouse, and the Barren River Stone Company, asking damages in the sum of $10,000 for their failure to take and pay for the property under their contract. On final hearing, the chancellor gave judgment for plaintiff and dismissed the counterclaim and cross-petition of the defendants. The defendants appeal.

In addition to the facts above set out, the two Stewarts, Miller and Condra all swear that the Slim Island Stone Company had no money to meet its pay rolls or to continue its business. They acquainted Gardner and Smallhouse with this fact. Gardner and Smallhouse were interested in the Barren River Stone Company, which desired to exercise the option given to Felton. In order to obtain an extension of the option, they agreed to furnish the Slim Island Stone Company the amount represented by the notes, for the purpose of meeting its pay rolls. The notes were simply executed as vouchers to be used by Gardner and Smallhouse in their settlement with the Barren River Stone Company for the purpose of showing the amounts paid out by them individually. There is also some evidence to the effect that by direction of the representatives of the Barren River Stone Company, a hotel was built on the property by Condra, and that Condra, from the time of the execution of the notes, carried on the business on behalf of the Barren River Stone Company. Gardner and Smallhouse testify that there was no agreement to the effect that the money was to be furnished in consideration of an extension of the option. While they were anxious for the option to be extended, and were therefore desirous of accommodating the de-

fendants, they simply loaned the money to the defendants. They deny that they directed Condra to erect a hotel, but say that Condra constructed the hotel on his own initiative, after consulting with them as to the propriety of doing so. At the time the notes were executed, checks for $475 were drawn in favor of the Slim Island Stone Company. In this way the interest was paid in advance. The Slim Island Stone Company endorsed the checks, received the proceeds and applied the proceeds to the payment of its payrolls. Before they would accept the notes, one of the signers had to take one of them several miles in the country to get the signatures of another signer. Before application was made to Gardner and Smallhouse to make the loan, application had been made to the bank, which would not take the notes unless there was included in the amount the amount of an overdraft theretofore advanced by the bank. After the bank declined to take the notes Smallhouse and Gardner agreed to lend defendants the money. It not being agreeable to Smallhouse to furnish his half, he endorsed one of the notes to Gardner, who furnished all of the money. The Barren River Stone Company never took charge of the property at all. The check given November 1st was cashed by the Slim Island Stone Company, and used by it two weeks after it is claimed by defendants that the property was turned over to the Barren River Stone Company.

We deem it unnecessary to go into the evidence at great length. Though the defendants swear most positively to facts tending to establish their defense, Smallhouse and Gardner are equally positive in their statements that the money was loaned, and not furnished to defendants in consideration of the extension of the option. The very fact that interest was deducted from the notes in advance, and checks made for the difference, tends to show that a loan was made. The notes themselves are evidence of the loan. The accounts deposited as collateral security are additional evidence of the loan. While it is claimed that these accounts were furnished to Gardner, and that the endorsement thereon was made by Condra without authority, yet even if that be true, the endorsement tends to show what Condra's construction of the agreement was prior to the defense herein raised. Furthermore, the written extension of the option, though making some changes in the terms of the original option,

simply shows that the option was extended "by mutual agreement of all parties," and is silent as to any other consideration. If the money was furnished as a consideration for the extension of the option, why was this fact not referred to in the extension agreement. If the notes were not to be binding, but were simply to be used as vouchers, why were they executed, when mere receipts would have answered every purpose? If the notes were to be used as mere vouchers, why the necessity for securing them by accounts against the Slim Island Stone Company? If the defendants were not to be bound, why go to the trouble of going several miles into the country to secure the signature of one of the signers? Reduced to its final analysis, the defense is that the defendants executed the notes in question with the agreement and understanding that they were not to be binding.

In the recent case of Farmers Bank of Wickliffe v. Wickliffe, 131 Ky., 787, Wickliffe, who was surety on certain notes, defended on the ground that he signed them with the agreement and understanding that he was not to be bound. In holding that this defense was not tenable, the court said:

"On this evidence the question is: Can the evidence offered by the defendant be received to contradict the written instruments themselves? He pleaded that the writings did not conform to the real contract by reason of fraud or mistake; but there is an entire absence of any evidence of fraud or mistake. He was not deceived as to the purport of the writings. He understood perfectly what he was signing. There was no misrepresentation made by Burton except the promise that he would not be held liable upon the writing. He knew that this part of the engagement was not in writing, and to have put it in the writing would have been to have nullified it. The bank could take a mortgage, but, if it could not, Wickliffe, a stockholder, would be charged with notice that the cashier had no authority to evade the law, and he would not be allowed thus to throw a loss on the other stockholders.

"In Wright v. Remington, 41 N. J. Law, 48, 32 Am. Rep. 184, the defense was that Mrs. Remington had signed the note upon a representation by the plaintiff that the signing of it by her was a mere matter of form, and that she would not be held liable on it. In the disposition of this defense, the court said: 'There is no rule

better settled than that evidence of contemporaneous
parol declarations is inadmissible to vary the terms of a
written contract. In the enforcement of this rule there
is often a strong tendency to disregard its effect, induced
by a feeling of the inequity of holding a party to the
strict performance of an agreement into which he has
entered, upon an assurance that it would not be enforced
according to its terms. This feeling has led courts some-
times to recognize the parol declaration upon the ground
that it amounted to an equitable estoppel.'Notes to Dutch-
ess of Kingston's Case, 3 Smith's Lead. Cas. 729. But
the rule of evidence that, when the contract is reduced
to writing is the only evidence of the contract, excludes
any evidence of the parol declarations. The rule is rec-
ognized as a wholesome doctrine by which men are en-
abled to place their agreements in a shape undisputable
by the uncertainty of oral testimony. The weight of
authority is overwhelmingly in favor of holding in the
language of the American editors of the Duchess of
Kingston Case: That 'a person who is so ill advised as
to execute a written contract in reliance upon an assur-
ance that it shall not be literally enforced must submit
to the loss if he is deceived, and cannot ask that a prin-
ciple of great moment to the community shall be made to
yield for the sake of relieving him from the consequences
of his indiscretion.' In Kulenkamp v. Groff, 71 Mich.
675, 40 N. W. 57, 1 L. R. A. 594, 15 Am. St. Rep. 238,
Groff showed that Kulenkamp said to him that he was
satisfied with the principal, but he thought he could get
his pay quicker, if Kulenkamp would go on it, because the
principal would not see him suffer; that it was a custom
at auctions to require a surety, and, if he made an excep-
tion in this case, others would demand the same privi-
lege; and that he would hold the note and see that Kul-
enkamp had no trouble. They thereupon called upon a
bystander to witness the agreement, and upon these terms
Kulenkamp signed the note. The court, rejecting the de-
fense, said: 'As far as the claim of fraud is concerned,
it is not tenable. The signature of Groff was not pro-
cured by false pretenses—by the statement of any fact as
existing which did not exist—but upon false promises
which have not been performed. It is no more nor less
than the nonperformance of an oral agreement made at
the time the note was signed and which oral agreement
was totally at variance with the terms of the written con-

tract as set forth in the note. This cannot be considered such a fraud as would nullify the note. If proof of this unperformed agreement not to hold Groff upon this note, in plain contradiction of its terms, can be admitted to destroy his liability upon it, then any unperformed oral agreement made at the time a written contract or note is executed may be admitted under the claim of fraud to defeat the terms and purpose of the written agreement. The maker of a note as well as the surety or indorser may say: 'It is true I signed the note, but it was agreed I was not to pay it, and the collection of it is a fraud upon me.' Written instruments, under the admission and use of such proof to defeat them, would be of but little value and altogether uncertain, and of no more strength than oral agreements.' The following decisions in this State are in accord with the rule above laid down: Dale v. Pope, 4 Litt. 166; Bowers v. Linn, (Super.) 14 Ky. Law Rep. 889; Citizens' Bank v. Millet, 103 Ky. 1, 20 Ky. Law Rep. 5, 44 S. W. 366, 44 L. R. A. 664, 82 Am. St. Rep. 546; Allen v. Thompson, 108 Ky. 476, 56 S. W. 823. These opinions are in accord with the general current of authority. See 17, Cyc., 590, where many other cases are collected. We therefore conclude that his defense cannot be maintained, and should not have been submitted to the jury."

In the instant case the defendants are sensible, intelligent men. They knew when they executed the notes that they were entering into an unconditional promise to pay the money therein specified. They did not allege or prove by clear and convincing evidence that any fraud was practiced on them, or that the notes were executed by mistake. It is simply an attempt to vary the terms of two written contracts by contemporaneous parol declarations. This cannot be done.

As to the counterclaim and cross petition for damages, it appears that under the option contract Felton was to make the cash payment therein provided for, and execute notes for the balance within the time limit fixed in the contract or within any extension of time which might be mutually agreed upon by the parties. Otherwise, all rights under the contract were to cease. The time was extended thirty days. The property involved consisted principally of real estate, and no separate price was fixed on the real estate and personalty. Neither Felton, the Barren River Stone Company, Gardner nor

Smallhouse accepted and exercised the option within the time and upon the terms therein prescribed. Having failed to do this, all their rights under the option contract ceased, and not having otherwise bound themselves in writing to take and pay for the property, it follows that defendants did not have with them any contract that could be enforced. That being true, defendants are not entitled to recover damages on their counterclaim and cross petition.

Judgment affirmed.