# Eigelbach v. Roppel.

(Decided Feb. 21, 1936.)

FINLEY F. GIBSON, Jr. for appellant.

BRUCE & BULLITT, W. A. HUBBARD, and LEO T. WOLFORD for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER —Reversing.

In September, 1932, appellant filed suit against appellee alleging an indebtedness of $7,000 evidenced by two promissory notes of $3,500, which had been transferred to appellant by original payees. Pleadings were filed, which drew motions to strike and demurrers, which need not be noted since amended and substituted answer was finally filed, completing the issues.

Substantially the amended and substituted answer alleges that the notes were originally given to Hammerschmidt, agent of Collins and Moore, a brokerage firm, not as a then present contract or obligation, but with certain conditions attending. It is set out that in March, 1929, appellee was the owner of some stock of the Fisher Packing Company, which was then contemplating merger with other packers. The agent approached appellee and pointed out to him that should the merger be completed, appellee would have some surplus money, and he, the agent, would be able to invest it satisfactorily. The agent offered to sell appellee 100 units of Metals and Mining stock for $7,462 and appellee says he told him that he could purchase it conditionally, the condition being that if the merger was not consummated there would be no sale, and that it was agreed that Roppel would pay $462, and execute notes for the balance of $7,000, and if the merger failed, Roppel would not have to pay the notes or any interest thereon, or, as he also expressed it, "there would be no sale."

Is is further pleaded that appellee executed the notes, first to the firm and later one to Moore and the other to Collins, and that at their due dates, and while the negotiations relating to the proposed merger were still being carried on, he renewed them. He pleads that the merger of the Fisher Company was definitely abandoned, and that he informed the agent, who then assured him the notes had been canceled and he would not be expected to pay the notes or any interest, but that instead of canceling the notes Moore and Collins held them until August, 1932, transferring them to appellant merely for the purpose of enforcing their collection.

In the latter part of paragraph 1 of the pleadings it is stated that "defendant says the notes sued on herein were delivered to Collins and Moore to be held by them awaiting a contingency which never happened," i. e., the merger of packing houses, "and were to become an absolute obligation on the part of the defendant" only in the event the merger was consummated, and then pleads want of consideration by the failure of the contingency. There is no charge of fraud or mistake pleaded in this paragraph.

Paragraph 3 pleads that the notes sued on were obtained by fraud and misrepresentation, in that Hammerschdimt induced Roppel to sign the notes fraudulently and deceitfully promising him that the notes would be held by the brokers until such time as the merger was completed, and in the event the said merger was not completed, the notes would be destroyed or surrendered, and that defendant relied on these statements, which were false and known to be so.

Other paragraphs of the pleading allege that at the time of the stock transaction the brokers were not qualified dealers in securities; that the stock attempted to be sold plaintiff was not qualified as required under the law; and, further, that the agent who sold the stock lacked the necessary authority.

Upon motion to strike from the amended and substituted answer, the court struck so much therof as alleged that plaintiff was not a real party in interest and that the notes had been transferred to him after maturity and without consideration, and also sustained a demurrer to paragraph 2 of the answer, overruling the demurrer as to paragraphs 1, 3, and 4; and appellant controverting of record the allegations of the answer, the cause was submitted and the jury found for Roppel. A motion for a new trial was overruled and Eigelbach appeals.

The court in submitting the issue to the jury submitted upon one issue alone. In substance, he told the jury that if they believed from the evidence that at the time of the execution of the two notes in question it was not understood between the brokers (through the agent) and Roppel that appellee was not to pay the notes unless the merger was consummated, "then the law is for the plaintiff," and a second instruction presented the converse of the first.

The contention of appellant is that the court erred in submitting the case to the jury at all, or in the manner as was done, taking the position that the condition or limitation which appellee alleged in his pleadings, and about which he testified, was a condition subsequent to their execution and delivery to payee, which could not be sustained by parol evidence. In other words, the condition went only to the payment of the notes, and not to their delivery; that the delivery was

complete, free from condition, and that subsequent contingencies related only to payment.

Appellee and Hammerschmidt were friends, both having been at one time and Roppel then employed by Fisher Packing Company. In March, 1929, the latter, then in the employ of the brokerage firm, approached Roppel and asked him if he knew there was a proposal of merger of the Fisher Company with other packers. Roppel says he did not know of it. The agent knew that Roppell had some Fisher stock and asked him what he was going to do with his money when that stock was taken up. Roppel says, "He had the figures; knew how much I was going to get, and told me he had something he could make some money on and named Metals and Mining Stocks." Appellee says he told the agent he knew nothing of stock dealing, but expressed confidence in his friend. He informed the agent that he had no money to invest, and he then testifies that he told the agent, "There aint but one way I would buy this stock. I said if the Henry Fisher Packing Company deal goes through I will buy this stock but if it don't go through I won't buy it." The agent was doubtful "if it could be handled this way," but he said he would go over and see the brokers, and shortly came back and said it could be handled all right. The agent assured Roppel that the 100 units of Metals and Mining Stock would cost $7,462, and the agent suggested a cash payment of $462, and notes for the balance. Notes were executed first to the firm, one for $4,000 and one for $3,000, but later these notes were replaced by two notes made payable to the individual members, each of $3,500, the notes sued on being their renewals.

In addition to what is quoted above, the appellee testified at various times that he was to pay the notes when the consolidation went through; again he said he would not have signed the notes except for the agent's statement they would not have to be paid unless the merger took place; then again when the court asked the question, "And then when it was merged with this other company, that was to be sold, and when that was sold you could pay," and he answered, "Yes, sir."

Hammerschmidt says that he knew of the proposed merger and that he had a pretty good idea what Roppel would receive if the merger went through; the two notes were given, as he understood it, "in the event

608

something went wrong with it," referring to the merger under consideration. He said that it was not understood that if the merger failed the deal was "null and void." His testimony is that Roppel told him he had no money, but if the merger went through he would have "lots of money," and the agent told him, "We will have to have notes of the debt until the thing is consummated; we will have to have protection in case the thing goes wrong." He further said, "We purchased this stock with the understanding that we would hold off this deal until the Fisher Packing deal was consummated."

This all occurred in March, 1929. The agent says it was on March 15th or 16th. The writing of the broker's agent showed that on March 19, 1929, the company received from Roppel $462 in cash and two notes, one for $3,000 and one for $4,000, and also shows this entry "for 100 shares of Metals and Mining stock deposited as security on these notes." The renewal notes sued on were dated respectively June 6, 1929, and November 4, 1929.

In June, 1929, the agent approached Roppel and told him that the Metals and Mining stock was not doing so well, that "it wasn't going good right now," but assured him that he had something that was good and suggested Allegheny Gas. He told him the Metals and Mining transaction would show a little profit, but suggested a sale of this stock and a purchase of the Alleghany Gas. Roppel said he told the agent that "it didn't matter about profit if it would be a loss it would be just the same. I am doing just what you are telling me to do." Appellee insists that during all the conversations with regard to the original sale of the stock, and the transfer of the Metals and Mining stock for the Alleghany, and his renewals of the notes, the merger was still in process and the transfer was made and the notes renewed, having in mind the original agreement that there was no sale unless the merger went through, or that the notes would not have to be paid if the merger failed.

The Metals and Mining stock was never delivered to Roppel, although the books of the firm showed that it was purchased and the proof shows that it was afterwards sold to others, and Roppel claims that he nev-

er indorsed it; he says he never saw it. The brokerage firm claimed that they sold it to various other persons and realized a profit for Roppel, who says he never received the same. The proof tends to show not only that this profit was credited to Roppel's note account, but that this account had been closed after the sale of the Metals and Mining.

The firm mailed him a check for a part of his profit on a sale of a block of Union Central, but when they sold the next block he did not hear from them and called up about it, and was informed that the profit had been applied to his account, and when Roppel, seemingly surprised, asked, "What account?" he was told that they were holding his two notes. Later he went up to the office to talk it over, and Roppel recounted the conditions under which he had agreed to purchase the Metals and Mining stock. When they left the meeting, at which the agent was present, the agent said to Roppel, "Ed, don't worry about it, we will juggle this thing around so you won't lose anything." Roppel never heard any more from the notes, so he says, until some time in 1932 when appellant came to him for payment. The meeting with the brokers and agent, above referred to, seems to have been in the summer of 1930, as best we can gather from the proof.

The Alleghany Gas stock, which it is claimed was bought for Roppel, was never delivered to him. It was never tendered to him when payment of the notes was demanded by appellant, nor when suit was filed on the notes, and it is argued by appellee that it was never bought, and on this point the proof is not definite.

It is pleaded that the firm of Collins and Moore and Hammerschmidt, the agent, were not qualified under the Securities Act, as to dealers and salesmen respectively; also that the firm had never qualified the Alleghany Gas stock under the said act. The proof seems to show that the firm was qualified as a dealer, but it shows that they had never qualified the Alleghany, the claim being that it being properly listed it needed no further qualification. The proof also shows that when the Metals and Mining stock was sold to Roppel, the salesman had not duly qualified, but had done so prior to the alleged sale of the Alleghany

stock. However, from our view of the case, these matters need not be discussed further.

We quoted above, in substance, the instruction given by the court, which was to the effect that if the jury believed from the evidence that Roppel had executed the notes with the understanding that they were not to be paid unless the merger went through, the law was for Roppel and they should so find.

The court was justified in his conclusion that the great weight of evidence, if not all of it when properly analyzed, demonstrated that the conditions and limitations proven were conditions and limitations subsequent to its delivery, and had relation only to payment based on a future contingency.

The cause was submitted on the one issue noted, and in submitting on this issue, particularly in the form and substance of the instruction, the court erred. The effect of the instruction was to say to the jury that if it was agreed that Roppel was not to pay the notes unless the merger was completed, the maker of the note could deliver a promissory note, and by an oral agreement attach a subsequent condition changing the terms and conditions of a note complete on its face, leaving out any consideration of fraud or misrepresentation.

The law in this respect seems to be well settled in this state, the general principle being that no oral testimony is admissible to change or otherwise complete obligation, unless it be pleaded and proven that at the time of the delivery there was fraud or mistake.

The distinction between a condition precedent to delivery of a note or contract, and a condition subsequent, which relates to payment rather than delivery, is well recognized, and to some extent explained in Pickrell v. Wilson, 199 Ky. 20, 250 S. W. 135; Mercer-Lincoln Co. v. Pruitt, 191 Ky. 207, 210, 229 S. W. 374, both noted in Barret v. Clarke, 226 Ky. 109, 9 S. W. (2d) 1091, 1093, the latter case being conclusive of the main question here.

In the Barret Case, supra, after showing that the notes were complete on their face, and were unconditional promises to pay a certain sum at a designated time thus purporting to be the entire contract, and that

the limitations claimed were subsequent to their execution, it was definitely held that any contemporaneous agreement tending to vary, alter, or contradict the terms of the writing could not be shown by parol evidence, unless the execution of the writing was caused by the fraud of the adversary, by mistake on the part of the contender and fraud by the adversary, or mutual mistake of both. In that case the court said:

"Appellant's plea of no consideration was in substance that it was understood and agreed between the plaintiff and himself that the notes were to be paid only in the event purchasers of the lots accepted deeds and made the payments in accordance with the terms of the sale, and if they did not do so then the notes would not be payable. He alleged that to the extent the notes represented appellee's commission on lots not accepted by the purchasers they were without consideration. Appellant's testimony is to the same effect. Such plea, however, cannot be sustained, for it is but an effort to vary the terms of the notes by showing by parol evidence a verbal stipulation entered into contemporaneously with the execution and delivery of those written memorials of their agreement. Each note is complete on its face, and is an unconditional promise to pay a sum certain at a designated time, and purports to contain the entire contract. The limitations which appellant says were attached to the notes are conditions subsequent to their execution and cannot be sustained by parol evidence. * * *

"In Simpson v. Blaine, 191 Ky. 465, 230 S. W. 934, it was held that parol evidence was not admissible to prove that the payee in a note had agreed he would not exact payment when the note became due if the maker did not then want the stock for which it was given in payment, or that he would let the note run as long as the maker wanted it to run. The reason for the decision is thus given:

"'It is the rule in this state that where by writing there is an unqualified promise to pay, parol evidence of contemporaneous declarations and agreements is not admissible to contradict the terms of the writing, unless the writing shows on

its face that it is only a part of the contract be- tween the parties. Tross v. Bills' Executrix, 189 Ky. 115, 224 S. W. 660, and authorities there cited.

" 'The note in this case was an unqualified and unconditional promise to pay the money to appellant, and with this incompetent evidence elim- inated the court should have sustained appellant's motion to direct a verdict for him.' "

Another case which is strongly in point is Lincoln v. Burbank, 218 Ky. 89, 290 S. W. 1081, in which the court reviewed quite a number of older cases bear- ing on the same question and holding to the same ef- fect. See, also, Stewart v. Gardner, 152 Ky. 120, 153 S. W. 3, and Farmers' Bank of Wickliffe v. Wickliffe, 131 Ky. 787, 116 S. W. 249.

Another error complained of is the court's allow- ing the amended and substituted answer to be filed on the day the case was called for trial, the objection be- ing urged not on account of any inconvenience caused by its filing, but because counsel for appellee interpo- lated in the substituted answer certain matter which had been stricken from the first amended answer by a former judge of the court. We note that upon the filing of the substituted answer counsel for appellant moved to strike and also demurred. The court sustained his motion to strike all matter of which counsel complained at that time.

An appeal was taken from the court's order dis- charging the attachment which had been perfected. Appellant says he was entitled to have it sustained on pleadings. Appellee contends that it was rightfully discharged under section 260 of the Civil Code of Prac- tice. However, it is noted that appellant superseded that portion of the judgment dismissing the attach- ment. His action in this respect preserves the status below. An order dismissing attachment where final judgment is entered may be superseded. Hey v. Hard- ing, 78 S. W. 136, 25 Ky. Law Rep. 1454. The matter of attachment may yet be tried out by the court below. Johnson v. Williams, 82 Ky. 45; Barker v. Illinois Surety Co., 169 Ky. 441, 443, 184 S. W. 377, 378.

From what we have said above, it is our conclusion that the court below erred in submitting the cause on

the instruction given, and that the judgment should be and is reversed with directions to grant a new trial in conformity with this opinion.

Judgment reversed.