## Kevil Bank v. Page et al.

March 24, 1939.

L. L. Hindman, Judge.

TURNER & TURNER for appellant.

M. C. ANDERSON for appellees.

OPINION OF THE COURT BY JUDGE REES—Reversing.

The Kevil Bank brought this action in the Ballard Circuit Court against J. M. Page and J. P. Page to recover on a note for $2,500 executed by the defendants June 25, 1929. In an answer and counterclaim the defendants denied that they owed the note, and alleged that it was made for the accommodation of the bank at the instance of its president and cashier; that there was no consideration for it; and that, as the proceeds of the note went to pay a first lien on 122 acres of land owned

by J. M. Thomas on which the bank had a second lien, they should be substituted to the first lien. In a reply the bank alleged that the note was for the accommodation of J. M. Thomas; that, as a part of the arrangement by which J. M. Thomas procured the appellees to sign the note for his benefit, he executed and delivered to them a mortgage on 122 acres of land owned by him, which was never recorded by the appellees; that the bank later accepted a deed from J. M. Thomas and wife to the 122 acres of land without knowledge of the mortgage to the appellees; that J. M. Thomas and wife conveyed the land to the bank in consideration of a debt of $3,500 owing to the bank by Thomas which was secured by a mortgage. On motion of the defendants, the case was transferred to the equity docket. Upon submission of the case, the chancellor adjudged that the defendants were not indebted to the bank on the note, and the plaintiff's petition was dismissed. On this appeal it is argued that the chancellor's finding is contrary to the preponderance of the evidence.

The 122-acre tract of land referred to in the pleadings was owned by J. M. Thomas, W. L. Thomas, and J. W. Thomas, who are brothers. On April 3, 1924, they borrowed $2,000 from the Prudential Insurance Company of America, and executed to it a mortgage on the land to secure the debt. W. L. Thomas later conveyed his interest in the land to J. M. Thomas and J. W. Thomas, and still later J. W. Thomas conveyed his one-half interest to J. M. Thomas. The money borrowed from the insurance company was to be used in repairing buildings and making other improvements on the land, but before it could be spent was attached and applied to other indebtedness of the Thomas brothers. On February 1, 1925, J. M. Thomas and J. W. Thomas borrowed $3,500 from The Kevil Bank and executed and delivered to it a mortgage on the 122-acre tract of land which was second and inferior to the mortgage held by the Prudential Insurance Company of America. The note to the insurance company was due ten years after date, but it contained a precipitation clause, and, default having been made in the payment of interest, the insurance company on September 4, 1928, filed a suit in the Ballard circuit court against the makers of the note and The Kevil Bank, the holder of the second lien. A default judgment was entered on January 15, 1929, and the land was ordered sold for the purpose of satisfying

the lien. The order of sale was never carried out. On June 25, 1929, J. M. Page and J. P. Page executed and delivered to The Kevil Bank their note for $2,500, payable six months after date and bearing interest at the rate of 6 per cent. from date until paid. This was marked on the face of the note: "Secured by mortgage on 122 acres." On the same day a deposit was made to the account of J. M. Thomas in the amount of $2,047. It is conceded that this was part of the proceeds of the note executed by the Pages and was used in paying the indebtedness of Thomas to the Prudential Insurance Company of America. The note was carried as an asset of the bank, and interest on the note was paid by J. M. Thomas until June 25, 1931.

The bank was placed in the hands of a receiver in October, 1931, but was reorganized after a few months and resumed business. When the foregoing transactions occurred, J. M. Thomas was cashier of The Kevil Bank. He was the son-in-law of J. M. Page, and nephew by marriage of J. P. Page. He has not been connected with the bank since it went into receivership in October, 1931. The proof for the bank shows that J. M. Thomas stated repeatedly to its officers and directors that the Pages were indebted to the bank in the sum of $2,500, and that he owed the Pages since they had executed the note to the bank for his benefit. Several officers and directors of the bank testified that the Pages admitted after the reorganization of the bank that they were indebted to it on the note. The appellees testified that it was their understanding that the note was executed for the accommodation of the bank and they were not to be liable, but the proceeds were to be used to pay off the indebtedness to the Prudential Insurance Company of America, and a new loan was to be obtained from the insurance company by J. M. Thomas and the note executed by the Pages would then be canceled. The defendants took the deposition of J. M. Thomas. He testified that he was cashier of The Kevil Bank for about ten years, and severed his connection with it on October 29, 1931. He and his two brothers owned 122 acres of land in Ballard county which they had inherited from their father. Desiring to make certain improvements on the farm in the way of buildings and fencing, they borrowed $2,000 from the Prudential Insurance Company of America and delivered to it a mortgage. Before the proceeds of the loan could be used for the pur-

pose for which it had been made, the money was attached and applied to other indebtedness. They then borrowed $3,500 from The Kevil Bank to pay for the improvements on the farm, and executed and delivered to the bank a mortgage which was second and inferior to the Prudential Insurance Company mortgage. The two mortgages amounted to far more than the land was worth. After the insurance company obtained its judgment and an order to sell the land had been entered, the defendants executed the note in question and the proceeds of the loan were used to pay off the judgment debt of the insurance company, including interest and costs. He further testified that it was understood that he would procure another loan from the Prudential Insurance Company and with the proceeds take up the note executed by the Pages. The insurance company was to be given a first mortgage on the land, the bank was to release its mortgage for $3,500, and another mortgage for that amount was to be executed to the bank which was to be inferior to the mortgage to the insurance company. He failed to obtain the loan from the insurance company, and the bank continued to carry the Pages' note. The witness stated that the note was executed for the accommodation of himself and the bank and that the parties never contemplated the Pages would be liable on it. He admitted, however, that the bank advanced $2,500, which was placed to his credit. He also admitted that he signed a statement concerning the note on July 20, 1936, and delivered it to the officers of the bank, in which he said:

"J. M. Thomas then went to J. M. and J. P. Page and told them that if they would give their note for $2000.00 plus the cost of the suit, interest, etc. amounting to $2500.00, as soon as this new loan was made J. M. Thomas would pay off the old loan with the $2500.00 and as soon as the new loan was secured, would pay them back their money.

"But after the old loan was paid, the Prudential Insurance Company would not loan more than $1800.00 on the farm at that time, which left a balance of $700.00 which J. M. Thomas could not meet.

"Afterwards, through Joe Page, I tried to secure a loan from the Federal Land Bank, and was informed by him that they were not making any new loans at that time. At the time I tried to get this

loan from the Federal Land Bank, J. M. and J. P. Page were told of my efforts to do so, and that I was unable to get the loan.

"At the time I made this loan, I told them I would secure Page with a mortgage signed by Barnelle Thomas and J. M. Thomas, to secure them for signing the note to The Kevil Bank.

"At the time J. M. Page and J. P. Page made their note to The Kevil Bank, Barnelle Thomas, wife of J. M. Thomas, executed her note to J. M. and J. P. Page, with her husband J. M. Thomas as co-maker, for $2500.00, and executed to them a mortgage on the land which had formerly been mortgaged to the Prudential Life Insurance Company by J. M. and J. W. Thomas, J. W. Thomas and his wife had previously deeded their interest in this land to J. M. Thomas."

The substance of this statement was that he was indebted to the Pages and the Pages to the bank. The fact that J. M. Thomas executed and delivered to appellees a mortgage for $2,500 to indemnify them against loss on the note to the bank indicates clearly that the makers of the note understood that they were liable to the bank. The record discloses that J. M. Thomas was in financial difficulties. He desired to retain ownership of the farm which he and his brothers had inherited from their father, and, at his solicitation, his father-in-law and his wife's uncle came to his rescue and executed the note sued upon to enable him to pay the judgment debt of the Prudential Insurance Company and prevent the sale of the land. The bank parted with its money, and, while it may have benefited indirectly from the transaction, yet the note was executed primarily for the benefit of J. M. Thomas. He paid the interest on the note to the bank for two years. Another significant fact is that when he conveyed the land to the bank the only consideration recited was the $3,500 mortgage held by the bank. No other indebtedness was included. Furthermore, Thomas and the bank entered into a contract whereby he was given the right to repurchase the land within a period of five years for $3,745, the amount of the mortgage held by the bank with interest. We think the preponderance of the evidence sustains the bank's contention that the note was executed for the benefit of J. M. Thomas and not for the benefit

of the bank, and that the chancellor erred in dismissing the petition.

The appellees are not entitled to be subrogated to the lien of the Prudential Insurance Company. It appears that most, if not all, of the proceeds of the note were used by J. M. Thomas to pay off his debt to the insurance company, but the appellees accepted a note and mortgage from Thomas and his wife to indemnify them against loss and failed to record the mortgage. The land was conveyed by Thomas to the bank without notice to it of the mortgage to appellees. This transaction occurred three years after the insurance company's lien was released. So far as the bank is concerned, the appellees were volunteers. They permitted the lien of the insurance company to be released and accepted a different security, a mortgage second to the bank's mortgage, and then failed to record it.

The judgment is reversed, with directions to enter a judgment for the plaintiff.