## Citizens Nat. Bank of Glasgow v. Damron.

March 28, 1941.

**44**

W. P. Sandidge, Jr., for appellant.

E. B. Anderson for defendant in the lower court.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On July 20, 1931, the appellee and defendant below, W. W. Damron, signed, executed and delivered to the appellant and plaintiff below, Citizens National Bank of Glasgow, Kentucky, his promissory note agreeing and promising to pay it six months thereafter the sum of $250. At that time, and continuously since then, Damron, the maker of the note, resided in Owensboro, Kentucky, and was engaged in the business of developing oil producing territory by taking leases and boring wells thereon. At the time of the execution of the note, and for some months prior thereto, he was temporarily located at Glasgow, Kentucky, where he was engaged in the development of an oil lease in Barren County not far from that city. In the meantime he had formed the acquaintance of a number of people in that city, among whom was the cashier of plaintiff bank and a relative of his by the name of Kinnaird Rowe, the latter being an infant in law between the ages of 19 and 20 years. The note was not paid, and this action was filed in the Daviess circuit court against defendant to recover judgment against him for its amount, interest and costs. The answer was a denial of the averments of the petition in so far as it alleged defendant's indebtedness to the bank to the amount of the note, but the answer did not deny its execution by defendant. A second paragraph pleaded no consideration therefor, whilst the third one said: "Defendant further states that his signature to the note sued on was obtained from him by fraud, covin and misrepresentation of the plaintiff, effected in this way: On the 20th of July, 1931, the cashier of the plaintiff Bank approached this defendant, and represented to him that said Bank desired to loan $250.00 to one of its customers, but at the same time it desired to conceal the identity of that customer from the directors of plaintiff Bank, and agreed that plaintiff Bank would loan to said customer said sum of $250.00 if at the time it did so defendant would sign, execute and deliver to it a note for that sum, due in six months and payable to it. Defendant further states that at the

same time, and then and there, the cashier of plaintiff Bank falsely and fraudulently represented to this defendant that the plaintiff would never thereafter at any time demand to him payment of said note, or any part thereof, or any interest accruing thereon; or attempt to collect off this defendant any part of said note, or any part of the interest, thereon; but on the contrary would collect said note and all of it, and all the interest accruing thereon off its said customer, to whom it loaned said sum of $250.00. Defendant states that pursuant to this agreement, and not otherwise, he signed, executed and delivered the note in suit for the accommodation of the plaintiff, and not otherwise.''

Plaintiff demurred to the answer as a whole and to each paragraph thereof, but the court overruled it as to all of the paragraphs, and plaintiff then filed a reply denying the defensive affirmative allegations. A trial was had before a jury resulting in a verdict for defendant upon which the court pronounced judgment dismissing plaintiff's petition. Its motion for a new trial was overruled, followed by its filing a transcript of the record in this court with a motion for an appeal, which motion is now sustained and the appeal is granted. For reasons hereinafter stated it is quite clear that the court committed error in overruling the demurrer to the answer, except the paragraph relying upon no consideration, and the testimony adduced at the trial disproves that defense, thus producing a situation where the court should have sustained plaintiff's motion for a verdict in its favor instead of submitting the case to the jury.

The burden of proof was properly on defendant to establish his defense and he testified that he knew, and was somewhat obligated to, the infant relative of the cashier of plaintiff, and that he was also acquainted with that officer whose infant relative desired to borrow an amount of money between $200 and $300 and that he had applied to defendant for a loan of that amount, but which was refused. Defendant then testified that it was later arranged between himself, the cashier of plaintiff and the latter's infant relative who was to get the benefit of the loan, that defendant execute his note to plaintiff for $250 and the proceeds thereof be delivered to the infant actual borrower, who had assisted defendand in procuring oil leases in that community and whom he agreed to assist in procuring the amount of money

requested. He then testified that plaintiff's cashier said to him: "I can't let him (cashier's infant relative) have this money on account of what I have told you here, but if you will sign a note for him and let him have it for a little while, he gets money from his mother and he is a little short now."

Following that statement the question was raised as to whether the cashier with whom defendant had that conversation was then living or dead, and plaintiff's objections to defendant's testimony because incompetent under Section 606 of our Civil Code of Practice (transaction with a person who was dead at the time it was given) was deferred until the fact of the cashier's death was determined, which was later found to be true. The court then excluded from the jury the testimony of defendant, followed by his introducing one Walter Sargent, an associate of his at the time in the oil development in Barren county, and who was rooming with him temporarily at a hotel in Glasgow. Sargent testified that at a meeting in his and defendant's room (presumptively the day before the execution of the note) there was present defendant, the witness, defendant's cashier and the latter's infant relative for whose benefit the meeting was held. Witness then testified:

"He (cashier) told him (defendant) if he would sign the note for the boy so that he could get that money that he would not have to worry about it, that he would see it was taken care of.

"Q. He as cashier would see that it was taken care of? A. I don't know whether it meant for him as cashier or not, but he said it would be taken care of and he would not have to worry about it."

After that witness testified, defendant was again introduced and he corroborated substantially the testimony of Sargent and said: "I did not receive anything in the world. I was just doing the boy a favor." He further testified that the cashier told him that: "The boy got money from his mother at intervals and he was a little behind and he would take the money out (of the bank) and his uncle would not know anything about it and his name would not appear in the bank." It will thus be seen that it was not even shown by either competent or incompetent testimony that there was any agreement between the cashier of the bank and defendant that

the latter would never be called upon to pay the note, but only that he would not lose anything by executing it, since the boy would take care of it with money obtained from his mother. It would require a stretching of the law beyond any limits we have heretofore contacted to construe such a statement as a fraud exercised on defendant to procure his signature to the note. To begin with, it concerned an act to be performed in the future, and if the cashier's statement had been broad enough to include a promise that defendant would never be required to pay the note he signed, it would then not be such a fraud as to vitiate the transcation because of its being only a promise to be performed in the future, and not a false representation of a present or past fact.

In its treatment of the subject of "Fraud and Deceit" the writer of the text in 23 Am. Jur., page 799, Section 38 says: "It is a general rule that fraud cannot be predicated upon statements which are promissory in their nature when made and which relate to future actions or conduct, upon the mere failure to perform a promise—nonperformance of a contractual obligation— or upon failure to fulfill an agreement to do something at a future time or to make good subsequent conditions which have been assured. Such nonperformance alone has frequently been held not even to constitute evidence of fraud." More than two pages of notes—in which are listed many cases from this court—are cited in support of that text, one of which is Turner Elkhorn Coal Company v. Smith, 239 Ky. 428, 39 S. W. (2d) 649. Another later domestic one approving the same rule is Dolle v. Melrose Properties Incorporated, 252 Ky. 482, 67 S. W. (2d) 706. See also the text in 10 C. J. S., Bills and Notes, page 1094, Section 498. The cases so dealing with the question—as well as the text authorities—base the rule on the proposition that fraud, in order to constitute a defense to an action on a note or other writing, "must relate to an existing or past fact," which is both material and false and made with the knowledge of its falsity, and with the intent that the one sought to be charged should act upon it to his detriment. Therefore, defendant failed to prove any fraud practiced on him by plaintiff's cashier as an inducement for him to execute the note sued on.

Neither would it have been a valid defense if defendant had proven a positive promise on the part of

the cashier that he should not be held bound on the note, since it is incompetent to defeat a positive unqualified writing or written promise, by proving a contemporaneous agreement in direct contradiction of the terms of the writing. That proposition is settled in this jurisdiction by our opinions in a number of cases, among which are Farmers' Bank of Wickliffe v. Wickliffe, 131 Ky. 787, 116 S. W. 249; Brown v. Turpin, 229 Ky. 383, 17 S. W. (2d) 253; and Carter v. Vine Grove State Bank, 236 Ky. 191, 32 S. W. (2d) 973.

There is, therefore, left in the case only the question of consideration. It is primary law that a consideration for a contract may be a benefit to the promissor, or a detriment to the promisee. Van Winkle v. King, 145 Ky. 691, 141 S. W. 46, and many other cases listed under Key Number System 50 and 51 in Volume 5 of West's Kentucky Digest under the subject of "Contracts." Damron testified that "I was just doing the boy a favor," which was, of course, to accommodate him by enabling him to procure the amount of money he wished to borrow. He was not accommodating the bank from which the money was being borrowed, and the detriment sustained by it (the promisee in the note) was the parting by it with the proceeds of the note and delivering the amount to the one whom defendants sought to favor. The transaction was, in legal effect, the same as if the one who was so favored (the infant beneficiary of the proceeds) had himself signed the note as principal and defendant had signed it as surety. But, under the declared law, it is not essential that the transaction should be so completed in order to render defendant liable, since if he borrowed the money from defendant on his own note—signed only by himself—to accommodate the beneficiary of the proceeds, it was a sufficient consideration to sustain the promise, and which principle we recognized and upheld in the cases of Kevil Bank v. Page, 277 Ky. 657, 126 S. W. (2d) 1082, and First National Bank v. Hignite, 241 Ky. 276, 43 S. W. (2d) 658. Bearing upon the questions discussed are also our opinions in the cases of Stewart v. Gardner, 152 Ky. 120, 153 S. W. 3, and Boeckley v. Central Savings Bank & Trust Company, 205 Ky. 508, 266 S. W. 15. The failure of the proof to sustain any of the defenses relied on is so completely settled by the authorities referred to as to require no further discussion, and in which con-

clusion learned counsel representing defendant in the trial below apparently concurs. He is known to this court to be a most diligent, painstaking and highly equipped member of the profession, but he did not see proper to brief the case for his client in this court, although he was notified to do so after the appeal was called for submission and time given him for that purpose. Such failure strongly indicates his conclusion that he was powerless to overcome the declarations of the law applicable to the questions involved, and which we have discussed.

Wherefore, for the reasons stated, the judgment is reversed, with directions to sustain the motion for a new trial and set it aside, to be followed by proceedings consistent with this opinion.